## Deal *versus* Bogue.

1. The sheriff in an execution upon a judgment against one of two partners, cannot deliver to the purchaser any of the partnership goods; but can sell only the contingent interest of the debtor partner in the stock and profits after settlement of the partnership account and payment of the partnership debts.

2. In an action of trespass by one of two partners against the sheriff for a levy and sale, under an execution against the other partner alone, in which it was alleged in the declaration that the property levied on and sold belonged *to the plaintiff*, the proper mode to take advantage of the fact that the plaintiff was not *the sole owner* of the goods levied on, was by *plea in abatement*.

3. Where the plaintiff, in an execution against one of two partners, attended the sale of the partnership property levied on, and purchased a part of it, this was such a participation as to render him liable as a trespasser, jointly with the sheriff and his deputy.

4. A party has no right to complain of instructions which must have been unfavorable to him.

5. In an action of trespass by one of two partners against the sheriff and others for a levy and sale, under an execution against *one only* of the partners, a written agreement *between the partners*, executed *after the levy, but before the sale* of the partnership property under the execution, by which agreement the other partner sold his interest in the partnership effects to the plaintiff in the suit, is evidence, on the part of the plaintiff, to contradict the testimony of the other partner, who had been examined on the part of the defendants as to the time when a sale of his interest in the partnership effects by the witness to the plaintiff in the suit took place; and to show that, at the time of the levy and sale, the plaintiff, if not sole owner, had at least an interest in the property levied on and sold.

APPEAL from the District Court, *Philadelphia*.

This was an action of trespass by Thomas Bogue *v.* William Deal, Thomas Tustin, and Thomas J. Jeffries. Deal was the sheriff of Philadelphia county, Tustin was his deputy, and Jeffries was the plaintiff in the execution hereinafter mentioned. The action was brought for seizing and selling certain personal property, viz., horses and carriages, on an execution in favor of Jeffries against Samuel Archer.

It was alleged in the declaration, that the defendant seized and unlawfully converted *the goods of the plaintiff*.

Bogue and Archer had been partners in a livery stable, and jointly owned the horses and carriages sold.

On the 29th December, 1849, Jeffries' execution *against Archer alone* was issued, which was returned "Levied on the personal property of the defendant on the 29th of December, A. D. 1849, and sold the same January 17, 1850, for the sum of $1144."

Previous to the sale, a notice signed by Bogue was served on the sheriff, to the effect that the property levied upon belonged to Bogue; that the firm had been dissolved, and the interest of Archer transferred to Bogue on the 8th January, 1850.

It was however contended on the trial, on the part of Bogue,

[Deal *v.* Bogue.]

the plaintiff, that, *before the levy*, viz., as early as the 13th December, 1849, he, Bogue, purchased the interest of Archer in the partnership property, and had the sole possession.

On the part of *the defendants* it was contended, and evidence given to show that the partnership had been dissolved in *November*, 1849; but that *Bogue* then sold out his interest in it to Archer, and that *the latter* was in the sole possession when the levy was made.

On the part of *the plaintiff*, there was given in evidence, as rebutting evidence, a written agreement under seal between Bogue and Archer, dated the 8th day of January, 1850, viz., *after the levy and before the sale*, by which it was agreed that the firm of Bogue & Archer be dissolved; and Archer assigned to Bogue all the money, stock, and effects of the partnership, and all rights to the lease of the premises used by the firm, for $1230; Bogue to pay the partnership debts, &c. This agreement was offered *as rebutting evidence*. Before it was offered, *Archer* had been examined on the part of *the defendant*, and he testified that the stock, when levied on, belonged *to him*, &c., and that he never perfected the sale to Bogue.

On the part of the plaintiff in error it was alleged, that there was not evidence that the sheriff removed any of the property, either before or after the sale; or that he took possession of it otherwise than by the act of levy; nor that he delivered possession of it, after the sale, otherwise than by making sale of it.

On the trial, however, it was testified that *Tustin* conducted the sale; that Jeffries was present but was not heard by the witness to give directions. Seven or eight horses, several vehicles, and six or seven sets of harness were sold. *Jeffries bought two horses.* The witness added, "*the articles I saw go away*. Bogue's establishment was broken up."

On the trial, several points were submitted on the part of the defendants, viz.:

1. That the plaintiff is not entitled, in this suit, to recover against the three defendants jointly.

2. That if, at the time of the levy, the property levied on was the joint property of Bogue and Archer, the plaintiff cannot recover.

3. That if the jury believe that the interest of Bogue in the goods levied on was, in November or December, sold by him to Archer; that afterwards, and before the levy, said Bogue and Archer entered into treaty for the re-sale of Archer's interest to Bogue; that Bogue was then permitted to be at the stables, and attended to the business while the treaty was pending, and that afterwards, before it was finally closed and its terms agreed on, the levy was made, the plaintiff cannot recover.

4. That the paper dated January 8, 1850, is not evidence in this suit of the time when the partnership was dissolved, nor of

[Deal *v.* Bogue.]

what was the actual consideration in the transfer or agreement made that day.

The Court declined to charge 'the jury as requested in defendant's first and second points, and affirmed the said defendant's third point, and also affirmed the defendant's fourth point, with this qualification, viz., that the said paper was evidence for the purpose of contradicting Archer, and further charged:

That if the goods, at the time of the levy, belonged to Bogue, the verdict must be for the plaintiff for the value of the goods.

That if the goods, at the time of the levy, belonged to Archer, the verdict must be for the defendant.

That if the goods were the joint property of Bogue and Archer, at the time of the levy, the sheriff, though he had a right to seize and make an inventory, had no right to take the goods out of the plaintiff's possession and deliver them to the purchaser.

The effect of the sale was, quoad the goods sold, a dissolution of the partnership, and the purchaser became a tenant in common with the plaintiff, subject to the partnership debts, with the right to enforce an account. * * * * " It is supposed that a technical difficulty exists, from the fact that the plaintiff was not the sole owner of the goods; but it appears to me that the difficulty does not exist here; that the proper mode to take advantage of such difficulty is by a plea in *abatement;* but if the defendant plead not guilty, it shall *be good,* but then the *plaintiff* shall only recover damages for his interest, whatever it may appear to be; the measure of damages is the plaintiff's interest without regard to the debt."

May 17, 1850, verdict for plaintiff for $675 damages.

It was assigned for error :—1. The Court erred in refusing to charge that the plaintiff is not entitled in this suit to recover against the three defendants jointly, as requested in defendant's first point.

2. The Court erred in refusing to charge that if, at the time of the levy, the property levied on was the joint property of Bogue and Archer, the plaintiffs cannot recover, as requested in defendant's second point.

3. The Court erred in admitting in evidence the paper of January 8, 1850, offered in evidence by said plaintiff for the purpose of showing what was the agreement of parties on that day.

4. The Court erred in charging that the said paper of January 8, 1850, was evidence for the purpose of contradicting Archer.

*Serrill* and *J. Fallon,* for plaintiffs in error.—It was admitted, as decided in Welsh *v.* Cooper, 8 *Barr* 217, that all who order a trespass or procure its committal are liable jointly; but it was con-

[Deal v. Bogue.]

tended that there was no evidence that Jeffries gave any directions to the sheriff other than was contained in the *fi. fa.*

As to the second specification of error:

If the property levied on was the joint property of Bogue and Archer, the sheriff committed no trespass *in seizing and taking* possession of it. The sheriff, having an execution against one partner or tenant in common, must seize the whole of the joint effects: Heydon v. Heydon, 1 *Salk.* 392; Jakey v. Butler, 2 *Ld. Raymond*, 871; Johnson v. Evans, 49 *Eng. Com. Law Rep.* 240, and the cases there cited.

The sheriff either sells the goods out and out, or he sells the undivided interest of the defendant. In neither case does he commit a trespass, because the *sale* does not affect the right or interest of the other partner or tenant in common.

Doner v. Stauffer, 1 *Penna. Rep.* 198, decides that in a separate execution, the creditor sells not the chattel of the partnership, but the interest of the partner encumbered with the joint debts. Same principle held in King's Appeal, 9 *Barr* 124; in Freeman v. Caldwell, 10 *Watts* 9; Johnson v. Evans, 49 *E. C. L. R.* 240; Moody v. Payne, 2 *Johns. Ch. Rep.* 548; Dutton v. Morrison, 17 *Vesey* 205; 3 *Bos.* and *Pull.* 289.

The purchaser at such sale succeeds to all the right of the defendant in the execution, and becomes a tenant in common with the other partner or joint owners, and is not liable in trespass for taking possession of the chattel, nor is the sheriff liable for giving him possession, for one tenant in common of chattels cannot maintain trespass against his co-tenant: 15 *Johns. Rep.* 179, Mesereau v. Norton; 10 *Cowen* 44, Remington v. Cady; 2 *Johns. Rep.* 467, St. John v. Standing; 3 *Johns. Rep.* 174, Wilson v. Gibbs; 1 *Eng. C. L. Rep.*, p. 5, Watts v. Hawkins; 21 *Pick.* 401, Furlong v. Bartlett. Also cited 3 *Bos. & Pul.* 288; *Id.* 289; *Id.* 254; 2 *Ves. & Beames* 300.

As to the *third* assignment. The paper of January 8, 1850, was not evidence, for it was *res inter alios acta;* the rights of the execution-creditor became fixed at the time of the levy, and no subsequent arrangement between Bogue and Archer could affect them.

As to the *fourth* assignment. The paper of 8th January, 1850, was not admissible to contradict Archer, because he had not been previously examined in regard to it: 1 *Philips on Ev.* 294; 2 *Brod. & Bing.* 286.

*Emlen*, for defendant in error.—It was said that there was direct evidence of the delivery of the goods after the sale, as well as evidence from which a delivery might be presumed.

It was said that the defendants below did not request the judge

[Deal *v.* Bogue.]

to charge that there was no evidence of delivery by the sheriff; and the point was not made on the trial.

As to the *first* assignment. Jeffries was present at the sale, and bought two of the horses. If the plaintiff be in the company of the sheriff's officer at the time of the execution, this is sufficient interference to render him liable to an action of trespass: 1 *Bos. & Pul.* 369. So if he receive the money: 1 *Maule & Selwyn* 583; *Strange* 996; also cited 46 *Eng. C. L.* 827.

*Second* specification. It has been contended, on part of plaintiffs in error, that, on an execution against one partner, levied on partnership property, the sheriff had a right to take possession in order to sell the interest of such partner. But in the declaration it is alleged, that the defendants seized and *converted to their own use* the property *of the plaintiff*. The allegation was of a trespass, not merely by *the levy*, but a conversion to the use of the defendants *by a sale*. The charge of the Court, therefore, should not have been confined *to the levy*.

But, if admitted that the sheriff, on an execution against one of two joint tenants or parties, may *seize* and take the entire chattel levied on, and that a sale of it passes only the interest of the defendant in the execution, still the question remains, whether a trespass is committed if the chattel be *delivered* to the purchaser. The cases cited on part of plaintiffs in error apply mainly to the cases of *tenants in common;* but a distinction exists between tenants in common and partners, in this, that the purchaser of the interest of one tenant in common is as much entitled to possession as the other; but in the case of *partners*, the purchaser is entitled only to the share of the debtor partner, *after payment of the joint debts;* and the other partner is entitled *to the possession and control* of the partnership effects for the purpose of paying the debts and settling the business. The rights of the purchaser do not attach until the joint debts are paid and the surplus ascertained: 1 *Wend.* 211; 2 *Id.* 553; 16 *Johns.* 102, and note. The party coming in right of the debtor partner comes into nothing more than an interest in the partnership, which cannot be *tangible*, cannot be made available or be delivered but under an account between the partnership and the partner: 4 *Ves.* 396, *Ex parte* Field. Also cited 17 *Ves.* 205; 2 *Johns. Ch.* 548; 2 *Johns.* 282; 6 *Mass.* 242; 22 *Pick.* 450; 9 *Barr* 124, King's Appeal; 1 *Harris* 67, Horton's Appeal.

If one of several partners sue *alone* in trespass, the defendant can take advantage of it only by *plea in abatement*, even though the defect appear in the declaration: 6 *Term Rep.* 766.

The paper of 8th January, 1850, was part of the *res gesta*. It was also evidence to rebut the testimony of Archer. The paper *was shown to him*, and he acknowledged his signature. If designed to be used to contradict a witness, the paper must be shown

[Deal *v*. Bogue.]

to the witness, and if he admits that he wrote or signed it, it may
be read in evidence by the counsel who cross-examined in his pro-
per order; 1 *Greenleaf's Ev.*, ch. 3, sec. 463. The paper was
read, to show that it was not till the 8th January, 1850, that
Archer parted with his partnership interest to Bogue, and that
the partnership existed, and that Bogue had an interest at the
*time of the levy*.

The opinion of the Court was delivered, January 17, 1853, by
WOODWARD, J.—It is established by the verdict, that the goods
levied on by the sheriff were partnership property; that they
belonged not to Archer, the defendant in the execution, but to
Bogue & Archer, as partners in the livery stable business.

The defendants on the trial asked the Court to say, that if, at
the time of the levy, the property levied on was the joint property
of Bogue & Archer, the plaintiff cannot recover. The Court
declined to give such instruction; but ruled,

1st. That the sheriff, though he had a right to seize and make
an inventory, had no right to take the goods out of the plaintiff's
possession and deliver them to the purchaser.

2d. That the proper mode to take advantage of the fact that
the plaintiff was not sole owner of the goods, was by plea in
abatement, which was too late after the general issue pleaded.

These opinions are assigned for error.

That a sheriff, acting under an execution at the suit of a judg-
ment-creditor of one partner, can sell and deliver no part of the
partnership goods, but only the contingent interest of the debtor
partner in the stock and profits after settlement of partnership
accounts and payment of partnership creditors, is a conclusion
that results necessarily out of the principles of the partnership
relation, and is sanctioned by a great number of modern decisions,
both in England and the United States. What are some of the
principles of this relation? It is a *contract* relation, and there-
fore no partner can be introduced into it except upon consent. A
purchaser at a sheriff's sale of a partner's interest becomes a
tenant in common with the other partners, so far as to entitle him
to an account; but he does not become a partner. On the con-
trary, the sale works a dissolution of the partnership, as com-
pletely as the death, insanity, or bankruptcy of a partner will do.

Partners are joint tenants of all the stock and effects employed
in their business. No partner can have a separate interest in any
part of the property belonging to the partnership, though each
has an entire as well as joint interest in the whole of the joint
property. A levy, then, to affect the interest of a partner, cannot
touch a specific proportion of the goods, nor the whole, because
others have property in every part, as well as the whole, coupled
with a right, resting in contract, to use them for the purposes for

[*Deal v.* Bogue.]

which the partnership was instituted. The only levy that can be made, consistently with the relation the partners sustain to the goods, is of the debtor's interest in the whole, and that is to be measured by final account.

Again, it was a principle of the Roman law, and it has been acknowledged in the jurisprudence of England and the United States, that partnership creditors must be first paid out of partnership property. Chancellor KENT thinks the basis of the rule is, that the funds are to be liable on which the credit was given—an opinion which Chief Justice GIBSON questioned in Doner *v.* Stauffer, 1 *Penn. R.* 204.

But whatever the grounds of the rule, there is no question concerning the rule itself. It is constantly recognized in distribution of assets, and is the vital element in the contract of partnership which gives it confidence with the public. But if a sheriff may deliver the goods of a firm to purchasers in pursuance of a sale made, not for a partnership debt but for a debt of one of the partners, what becomes of the equity of joint creditors? They are not in Court to contend for the purchase-money, and, if brought in and their claims adjusted, that is not the fund to which they gave credit and on which they have a lien. They are creditors of the partnership, and their lien relates to the interest of *all* the partners in the *whole* stock, and they cannot be compelled to look to any less security. Or, shall they follow the goods sold into the hands of the purchasers? This, in most instances, would be impossible, and always it would be substituting another and an inadequate security for that which they looked to when credit was given to the firm. Thus would the fundamental principles of this beneficial relation be subverted if a sheriff were permitted to seize and sell the whole or part of the stock, in specie, on an execution against one partner.

But it is as clear, upon authority as upon principle, that the Court were right in denying the power of the sheriff to sell and deliver the goods. In Taylor *v.* Fields, 4 *Vesey* 369, the facts of which case are more fully stated in a note to Young *v.* Keighly, 15 *Vesey* 559, Chief Baron McDONALD laid it down that the party coming in right of the debtor partner, comes into nothing more than an interest in the partnership which cannot be tangible, cannot be made available, or be delivered but under an account between the partnership and the partner. To the same effect is the language of Judge GIBSON in Doner *v.* Stauffer, 1 *Penn. R.* 198, and in Kramer *v.* Arthurs, 7 *Barr.*

See also *Story's Equity*, vol. 1, p. 626–7, and the cases cited.

Stock in incorporated companies may be levied in execution and sold on *fi. fa.*: Lex *v.* Potter, 4 *Harris* 295, and yet nobody ever supposed that the property represented by that stock, or any part of it passed to the purchaser. Even in the sale of land the

[Deal v. Bogue.]

sheriff delivers not the defendant's possession, but only his title. It is a distinct proceeding that puts the purchaser into possession, and if the sheriff should deliver possession upon his *venditioni exponas*, he would be a trespasser. The ruling of the Court, there-  fore, was in accordance with the principles and analogies of the law as well as with its authorities.

As to the other point in the charge, the Court were unquestion- ably right. The plaintiff claimed to be the sole owner of the goods, in virtue of a purchase of his partner's interest between the time of the levy and the sale, and, to the action instituted in his own name, the defendants pleaded not guilty. After this, it was too late to plead the nonjoinder of the other partner in abate- ment, and yet it was only by such plea advantage could be taken of the nonjoinder. If one of several part owners sue alone in tres- pass, the defendant can only take advantage of it by plea in abate- ment, though the defect appear on the declaration : Addison *v.* Overend, 6 *Term R.* 766.

Another ground of defence was, that the plaintiff could not recover against the three defendants jointly. The sheriff and his deputy were liable *virtute officii*, for an illegal execution of the writ. If the plaintiff in the execution had merely issued his writ, and left the sheriff to execute it without instructions, I do not say he could have been made liable as a trespasser; but it was in evidence that Jeffries, the plaintiff in the execution, was present at the sale, and bought two of the horses. This was such partici- pation as to make him a trespasser, and he was well joined in the action.

It was contended in the argument that there was no evidence of the delivery of the goods by the sheriff, and, as the Court held that the trespass consisted, not in levying on the goods, but in the sale of them, they should have instructed the jury that a sale without delivery was not a trespass.

Frederick Dick swore he was present at the sheriff's sale. Seven or eight horses, several vehicles, and six or seven sets of harness were sold ; that Tustin told him the amount of the sale was $1144; that Jeffries bought two horses; "the articles I saw go away. Bogue's establishment was broken up. The goods were delivered to the purchasers."

Rutter says the goods were sold out under the execution; and the return of the sheriff on the *fi. fa.* shows a sale of the *goods* and not of the *interest of Archer*.

Now, in view of such evidence, what other presumption would be reasonable than that the sheriff delivered the goods to the pur- chasers ? If the defendants wanted the opinion of the Court on the question whether such evidence proved a delivery, they should have asked for it. In the absence of a prayer, the Court were in no error in submitting the evidence without instructions to the

[Deal *v.* Bogue.]

jury. But had the defendants sought and obtained instructions, they must have been unfavorable to them, and therefore they have no cause to complain. In the admission of the paper of 8th January, 1850, and in the use that was made of it on the trial, we see no error.

On the whole, no error is discovered in this record, and the judgment is accordingly affirmed.