GEORGE E. TAYLOR AND M. I. LEBLANC, PLAINTIFFS
IN ERROR, V. PATSEY RYAN, DEFENDANT IN ERROR.

1. **Trespass.** When in an action of trespass *de bonis asportatis*
against a constable and one who was plaintiff in an attachment
suit wherein the property of the plaintiff in the case at bar, who
was a stranger to the attachment suit, was wrongfully seized
and sold by the said constable as the property of the defendant
in said attachment suit, the said constable and original plaintiff
answer jointly admitting the taking but denying the ownership
of the plaintiff at bar and alleging ownership in the defendant
in the attachment suit, the said original plaintiff, co-defendant
at bar, will be held to have adopted the taking by the constable,
and to be jointly liable with him.

2. **Impeaching Witness.** A witness may be impeached by
bringing other witnesses to swear that his reputation for truth
is bad. In this mode of impeachment, however, it is not com-
petent to show what two or three persons only may think or say
concerning him, but the inquiry should be confined to the gen-
eral estimation in which he is held by his neighbors and ac-
quaintances. *Mathewson v. Burr*, 6 Neb., 312.

3. **Trial:** EVIDENCE: INSTRUCTION. On the case set out at length
in the opinion, *Held*, That the chattel mortgage and note therein
referred to were properly admitted, and the instruction therein
referred to properly refused.

ACTION in the district court of Richardson county by
Ryan to recover damages arising from the sale of certain
property, of which he claimed to be the owner, by
Taylor, constable, who had levied on and held it as the
property of one Postal, by virtue of an order of attachment
issued in a cause wherein LeBlanc was plaintiff and Postal
defendant. On the trial before DAVIDSON, J., the defend-
ants asked the court to instruct the jury that if the chattel
mortgage referred to in the opinion "was not accompanied
by an immediate delivery of the property mortgaged and
followed by an actual and continued change of possession
thereof, the mortgage would be presumed to be fraudulent,

unless it was made to appear that the same was executed in good faith." This request was refused. Verdict for plaintiff and cause brought up on petition in error.

*A. Schoenheit* and *E. W. Thomas*, for plaintiffs in error, cited: Cooley on Torts, 468. *Hyde v. Cooper*, 26 Vermont, 552. *Wallis v. White*, 15 N. W. R., 767. . 1 Greenleaf Ev., § 461.

*John Gagnon* and *C. Gillespie*, for defendant in error, cited: *Perrin v. Claflin*, 11 Mo., 13. *Lampsin v. Brander*, 11 N. W. R., 95. 1 Greenleaf Ev., § 461. *Mathewson v. Burr*, 6 Neb., 312. Starkie on Evidence, 210. *Jackson v. Campbell*, 5 Wend., 572. *Sherman v. Crosby*, 11 Johns., 70. *Derby v. Weyrich*, 8 Neb., 177. *Noble v. Himeo*, 12 Id., 196. *Zunkle v. Cunningham*, 10 Neb., 164.

COBB, CH. J.

The sixth and seventh grounds of error as set out in the petition in error are made the foundation of the first points in their brief, and we will consider them in that order.

6. Because there was no evidence tending to connect defendant LeBlanc with any wrongful act that may have been done by defendant Taylor, and there was no evidence tending to prove that LeBlanc aided, abetted, or advised the constable Taylor to seize or sell the property in controversy.

7. Because there was no evidence as shown by the bill of exceptions to sustain a verdict against defendant LeBlanc, and the verdict should have been set aside as to him.

The plaintiff in his petition charges that the defendant Taylor was at the time, when, etc., a constable; that the defendant LeBlanc sued out an order of attachment in a certain action in the county court of Richardson county, wherein said LeBlanc was plaintiff and one George Postal was defendant, which order of attachment was placed in

the hands of said Taylor as constable, and that by virtue of said order of attachment the said constable levied upon and attached the property of the plaintiff; that he notified the defendants severally that the said property was his, etc., and demanded that the same be released from said attachment and returned to him, "which defendant Taylor, with the advice and by the order of defendant LeBlanc, refused;" that on or about the 30th day of December, 1880, the defendant LeBlanc applied for and obtained from the said county court an order for the sale of said property as the property of said George Postal, and the said defendant sold said property on the said order and appropriated the proceeds thereof. The answer of the defendants is joint. They admit the taking by defendant Taylor and the sale of the goods by him under the order of sale as the property of George Postal, and allege that it was the property of said Postal. Upon this defense they went to trial, and the jury found in favor of the plaintiff. The evidence in the case is not quite as satisfactory as might be desired. But are we not to presume that the evidence on the part of the plaintiff was confined to the ownership of the property, for the reason that he considered that to be the only material fact put in issue by the pleadings, and had he not a right to so consider?

In the case of *Perrin v. Claflin*, 11 Mo., 13, the court held that " where the goods of one are seized under an attachment against another, on an interpleader filed by the owner of the goods so taken, if the plaintiff in the attachment defend the interpleader, it will be evidence of his assent to the seizure by the officer, and such subsequent assent will render the plaintiff liable in trespass." Under our practice the owner of the property wrongfully taken on an attachment against another could not recover his property or the value of it by means of an interpleader, but is obliged to sue in replevin or trespass; yet the principle is the same, and I think that the answer of LeBlanc jointly with

Taylor, denying property in the plaintiff and alleging property in Postal, is equivalent to defending an interpleader under the Missouri practice. If the defendant LeBlanc did not take the property or authorize or ratify its taking by the officer Taylor, what difference does it make to him whether it was the property of the plaintiff or not?

In the case of *Hyde v. Cooper*, 26 Vt., 552, cited by plaintiff in error, the court in the opinion by C. J. Redfield say: " As a general rule, perhaps, where the mistake is one of fact, and such as makes the officer a trespasser, and the party knowing all the facts consents to take the avails of a sale, or where he counsels the very act which creates the liability of the officer, he is implicated to the same extent as the officer. But where the party does not direct or control the course of the officer, but requires him to proceed at his peril, and the officer makes a mistake of law in judging of his official duty, whereby he becomes a trespasser even by relation, the party is not affected by it, even when he receives the money which is the result of such irregularity, although he was aware of the course pursued by the officer. He is not liable unless he consents to the officer's course, or subsequently adopts it." Now the mistake or irregularity which made the officer a trespasser in the case at bar, was the seizing and selling of the property in question. Does not the party adopt "the officer's course" when he comes into court and joins that officer in an answer averring the same to be the property of the defendant in the attachment and order of sale sued out by the said party and for his use and benefit? I think he does.

The next point made in the brief is, that the court erred in sustaining the motion of the plaintiff below to suppress certain portions of the deposition of a certain witness by whom it was sought to impeach the plaintiff.

The questions and answers suppressed are as follows:

Int. Do you know what his reputation is in the community where you know him, for truth and veracity?

A.   It is a little bad from what I have heard men say that had him employed.

Int.   Have you-been acquainted with his general reputation for truth and veracity during that time?

A.   I have.

Int.   You may state what that reputation is.

A.   It is not very good.

Int.   You may state what his general character has been during this time, if you know.

A.   From what I have heard I should not think it would be very good.

Int.   Give us a reason if you can why you say his character is not very good.

A.   Mr. Henthorn run the Senate saloon last winter. He told me that Pat was a d—d thief; Pat had been in his employ in the saloon during the winter. After he quit Henthorn, Pat ran the saloon for Slaughter. After he had been working for him some time, Slaughter told him he had no more use for him. He paid him what he owed him, and Mr. Slaughter says: Pat you stole so much money from me—witness says I have forgotten the amount —and I want it. I want you to give it back, and Pat handed it right over to him.

In the case of *Matthewson v. Burr*, 6 Neb., 312, this court, in the opinion by C. J. LAKE, say: "In this mode of impeachment it is not competent to show what two or three persons say concerning the witness, but the inquiry mnst be confined to the general estimation in which he is held by his neighbors and acquaintances. Nothing short of this will answer." Under the rule thus correctly stated the testimony was properly suppressed. I will add that the impeachment of witnesses by the testimony of other witnesses as to character is not greatly favored in the law; and if a party pursuing it should not in all cases be held strictly and technically to the rule of evidence in such cases, he should be held to the spirit of it.

37

The third point is, that the court erred in admitting the chattel mortgage and note from George Postal to John Postal in evidence. The objection made to the reception of the mortgage in evidence was in the following words: "It does not show that this mortgage is valid in the state of Missouri, or that it was a lien on the property; there is no sign of its being recorded; it is immaterial and irrelevant."

There was no error in the reception of this mortgage. The deposition of George Postal had been read in evidence, in which he testified as follows:

Q. State how the plaintiff became the owner of said furniture. (This being the furniture which according to all the testimony had been traded to C. C. Davis for the horses, harness, and saddle involved in the suit.)

A. I sold it to him. There was a mortgage upon it, and I owed Patsey for labor and borrowed money. He released the mortgage and my indebtedness to him for labor and money borrowed, and paid the difference between said indebtedness and the value of the furniture.

The plaintiff himself had been upon the stand, and had testified that the horses, etc., taken on the execution, belonged to him; that he traded certain goods and furniture, constituting a hotel outfit for it, to Lum Davis; and in reply to the question, What did you pay Postal for the hotel property? he stated the facts substantially as they had been stated by Postal in his deposition. He had already stated that at the time he traded the hotel furniture to Davis for the horses, etc., he had the said hotel furniture in his possession—that he had had it for six weeks or two months; that he got it from George Postal. All of the evidence in the case on either side is agreed that the horses, etc., had originally belonged to C. C. Davis, of Rulo, and that he had traded them for the said hotel furniture, and that the said trade was in point of fact made by Davis with the plaintiff; but the contention on the part of defendants was

that in making said trade the plaintiff was in reality acting for Postal. Such being the case, I think that the mortgage was material, and its introduction necessary to a proper understanding of the case by the jury. The mortgaged property being in the actual and exclusive possession of the plaintiff at the time of the trade to Davis, it was unnecessary to prove the *bona fides* of the mortgage. Otherwise it must have been held to be void until proof of its *bona fides* had been made. Accordingly I conclude that there was no error in the refusal of the court to instruct the jury as requested by the defendants in regard to the admission in evidence of the said chattel mortgage and note from G. W. Postal to John Postal, and transferred by the latter to the plaintiff.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.