## JAMES FRICK v. J. N. REYNOLDS AND BELLE REYNOLDS.

(Filed February 18, 1898.)

1. TRIAL—*Evidence—Motion to Withdraw Case From the Jury.* A motion to withdraw a case from the jury and render judgment for the plaintiff upon all the evidence, presents to the court the same question as a motion to direct the verdict in favor of the moving party; and this should be done where the party on whom rests the burden of proof has wholly failed to present any evidence to support his case, and there are no disputed facts for the jury to pass upon. But where there was evidence in the case making a dispute of fact, such a motion is held to have been properly overruled.

2. PROMISSORY NOTE—*Not Innocent Purchaser.* Where F. and G. owned a stallion in partnership, each having a one-half interest in the horse, and upon the sale thereof two notes were given G., in part payment for the horse, and the notes were transferred for value before maturity by G. to F., it is *held*, in an action thereon, that F. was not an innocent purchaser, and was chargeable with all of the notice of fraud in the transaction in which the note was given that G. possessed.

3. PARTNERSHIP—*False Representations.* All the members of a partnership are bound by the false representations of one of the partners, made upon the sale of partnership property.

4. EVIDENCE—*Immaterial—Admission of, No Error.* The admission of immaterial evidence, even if incompetent, by reason of the disqualification of the witness, could not constitute reversible error where the case was in no way prejudiced thereby.

5. PROMISSORY NOTE—*Declarations—Prior Holder.* The declarations of a holder of a promissory note while he held the note, and before the transfer thereof, are admissible in evidence to prove the failure of the consideration of the note as against one who does not hold the paper as an innocent purchaser, or *bona fide* holder.

6. SAME—*Failure of Consideration—Defense.* In a defense of failure of consideration for two promissory notes which were given as part of the consideration for the sale of a horse which was falsely represented to be sound, and which died soon after the sale, the defense, if it prevails, goes to the whole of the notes, and does not require any proof of value to warrant the jury in determining that the horse was worthless.

7. VERDICT—*Erroneous.* Where, upon the polling of the jury one of the jurors answers that he has consented to the verdict in order to prevent the hanging of the jury, but that he was not satisfied from the evidence that the thing required to be proven by the successful party has been established, and a motion is made that the court direct the jury to return to their room for further deliberation, it is erroneous to overrule such motion and accept the verdict.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before James R. Keaton, District Judge.*

*B. F. Burwell* and *Hugh H. Hillman,* for plaintiff in error.

No brief for defendants in error.

Opinion of the court by

BIERER, J.:  James Frick brought his action in the district court of Oklahoma county to recover judgment upon two promissory notes for the sum of $200 each, dated November 11, 1893, and payable one in one year, and the other in two years from date, with interest at 10 per cent. per annum, and to foreclose a real estate mortgage to secure these notes, the notes being given to one J. W. Greely, and executed by J. N. Reynolds, and the mortgage by J. N. Reynolds and Belle Reynolds, his wife, the latter of whom it appears was the owner of the real estate mortgaged.

These defendants filed their answer, alleging, among other things, that the notes were given in part payment for a stallion which was owned jointly, and as partners, by James Frick, the plaintiff, and J. W. Greely, the payee of the notes; and that the stallion was sold to J. N. Reynolds for the consideration of $600, to be paid one hundred dollars in cash, to Greely, one hundred dollars by note,

in six months, to Frick, and the other four hundred dol-
lars in the notes sued on; and that the one hundred dol-
lars to Greely and the one hundred dollars to Frick had
been paid, leaving the four hundred dollars, represented
by the two notes, unpaid; that Greely, in the sale of the
stallion to Reynolds, represented and warranted the stal-
lion to be a sound horse in every particular, and free
from disease; that at the time of the said representa-
tion and sale of the horse, he was in a diseased condition,
and that the representation of his soundness by Greely
was made with the knowledge that he was diseased and
unsound; and that the horse died shortly after the sale;
wherefore the consideration for these notes has wholly
failed.

An issue was joined on this answer by general denial.
Trial was had on this issue, and verdict for defendants,
and judgment rendered for them thereon.

At the close of the submission of the evidence the plain-
tiff moved the court to withdraw the case from the jury,
and render judgment for the plaintiff. This should be
done where the party on whom rests the burden of proof
has wholly failed to present any evidence to support his
case, and there are no disputed facts for the jury to pass
upon. (*Jackson v. Kincaid,* 4 Okla. 554.) Such a motion
presents to the court the same question as a motion to
direct a verdict in favor of the moving party, and concern-
ing this, it is said in the case of *Sullivan v. Phoenix Ins.
Co.,* (Kan.) 8 Pac. Rep. 112:

"A motion to direct a verdict in favor of the defendant
is equivalent to a demurrer to the plaintiff's evidence,
about which it has been said that 'it cannot, therefore,
be used to deprive a party of his right to have questions
of fact determined by a jury. It matters not, therefore,

whether the testimony which a party offers to prove a fact be absolutely conclusive, or only very weak and of uncertain import; he has the right to have that testimony considered, and its value and sufficiency determined by a jury.   The court may sustain a demurrer to evidence only under the circumstances which will permit it, after all the evidence has been presented on both sides, to withdraw the consideration of the case from the jury and decide it itself.' (*Kansas Pac. Ry. Co. v. Couse*, 17 Kan. 571.) In another case it is said that before a case can be withdrawn from a jury the court must be able to say 'that, admitting all the evidence to be true that the plaintiff has introduced, and that none of the evidence conflicting therewith is true, the plaintiff has utterly failed to make out his case.' (*Brown v. Atchison, T. & Santa Fe Ry. Co.*, 31 Kan. 1; S. C. 1 Pac. Rep. 605.   See, also, *Jansen v. City of Atchison*, 16 Kan. 358; *Watson v. Rogers*, 21 Kan. 529; *St. Joseph & D. C. Ry. Co. v. Dryden,* 17 Kan. 278.")

Is the defense of want of consideration wholly unsupported by any evidence?   It is undisputed that this horse was the only consideration for these notes, and that he was sold by Greely to J. N. Reynolds for the consideration of six hundred dollars, of which these notes represent four hundred dollars; and that the horse died thirty days after the sale, which was made on the date of the notes. J. N. Reynolds swears that when the sale was made Greely represented the horse to be perfectly sound and good in every respect, and that he relied upon these representations, and would not have bought the horse without them.   That the horse was not used for eight days after the sale; was then used on a dray a couple of days, when he became sick, and then died in about twenty days.   That after the horse became sick Greely frequently came to his place and looked after. and helped to treat

the horse, and during that time said to Reynolds not to be uneasy, that he, Greely, knew what was the matter with the horse, and that we would pull him through and trade him off. That he had been sick twice while on his, Greely's, farm, where he was worse off than at this time. That a man was coming from Missouri, and that "we" could patch up the horse, and that he, Greely, would help Reynolds trade him to this party.

B. F. Owens, a witness for the defendant testified that he heard a conversation between Greely and Reynolds, in which Greely stated that the horse was not what he represented him to be; and that Greely admitted that the horse was not sound; and that Greely said to Reynolds "Yes, John, I knew the horse was unsound. I thought I would help you to turn him." He says; "1 know a man coming here from Missouri I think you can sell him to." If this testimony was true, then the horse was not the kind of horse that Greely represented, and that Reynolds believed him to be, and no matter how strong the evidence against it was, and it does, indeed, appear quite strong in the record, it was a dispute of fact for the jury to determine, and the court committed no error in overruling this motion. And this determination leaves open for consideration a number of other assignments of error which it is alleged the court committed on the trial of the case.

It is claimed that this defense of failure of consideration could not be made to these notes, because they were negotiable paper, and transferred for value before maturity to the plaintiff, and that he is an innocent purchaser thereof. The facts, however, as they appear from the record, do not make him an innocent purchaser of these notes. Counsel admit in their brief that Frick

and Greely were partners in the ownership of this stallion. The notes were given to Greely as a part of the arrangement of the sale, but Frick before the transfer of Greely's interest, and the endorsement of the notes to him, retained the same interest in them that he had owned in the horse—one-half interest—and Frick could not become an innocent holder for value by purchase of the other interest in the notes from his partner. And upon such a purchase he was chargeable with all of the notice of fraud in the transaction in which the note was taken, as his partner, Greely, possessed. It was held in the case of *Calvert v. Dimon*, (Colorado) 34 Pac. Rep. 170, that:

"Where a note has been transferred by the payee to a firm of which he is a member, the firm cannot defeat the defense of fraud, in an action thereon, on the ground that it had no notice thereof, as it is chargeable with the payee's knowledge."

It is next claimed that Greely had no authority to make representations of the soundness of the horse that would bind the firm; but that such representations could bind only Greely himself; that the partnership was not a general partnership, but was only a partnership in this horse. This contention is wholly untenable. A partner is a principal for himself, and agent for his co-partners, and has power to bind not only himself, but his partners, by any declaration made within the scope of the partnership business. And this does not depend on the amount of property which the partnership owns; and it is wholly immaterial in this respect, whether Frick and Greely owned one horse, or owned a thousand horses. The liability of the partnership for the representations of the partner were just the same.

"That all the members of a firm are answerable for a false warranty made by one of the members, in a sale of partnership property, within the scope of his authority, is too clear for argument. They are equally liable for a fraud under the same circumstances, especially where they share in the profits." (*Morehouse v. Northrop*, 33 Conn. 380; 89 Am. Dec. 211.)

Counsel claims that error was committed in admitting the testimony of Belle Reynolds, who, although a party to the case, it is asserted was not a competent witness, because while she was a defendant with her husband, J. N. Reynolds, she was not a party to the note, the liability upon which was the issue before the jury. It is not necessary here to determine whether she was a qualified witness or not, for the reason that her evidence, as it appears in the record, did not in any respect relate to Greely's alleged representations of the soundness of the horse, or the condition of the horse, for she answered that she knew nothing about these, and her testimony related entirely to a matter which was taken from the jury by the instructions of the court to the effect that it was incumbent upon the defendant to prove the allegations of false representations of the soundness of the horse, or the plaintiff was entitled to recover on these notes. And even if incompetent, it is immaterial, and as the case was in no way prejudiced thereby, no reversible error could have been committed in this ruling.

Objection was made to the admission in evidence of the statements made by Greely to Reynolds and Owen concerning the unsoundness of the horse. It would appear from the record that these declarations were made after the sale, and during the sickness of the horse, and before the sale of Greely's interest in the notes and the

transfer of them to Frick, which appears to have been done on the 25th day of August, 1894. It is claimed particularly as to the testimony given by Owen that it was with reference to a declaration made by Greely long after the transfer of the notes, but we cannot so hold; for although he gave the date of the conversation as some time during the year 1895, yet the quotation from it which we have given above would make it appear to have been during the sickness of the horse, and during that period it is undisputed that Greely held these notes, and retained his interest therein. But even in this view of the case it is urged that Greely's declarations were not competent as against the subsequent holder of the notes. That such declarations are admissible however, is now well established by the text writers and the decisions upon the question. In Greenleaf on Evidence, sec. 190, it is stated:

"In an action by the indorsee of a bill or note dishonored before it was negotiated, the declarations of the indorser, made while the interest was in him, are admissible in evidence for the defendant."

In the case of *Bond v. Fitzpatrick*, 4 Gray 89, it was held that:

"In a suit against the maker of a promissory note by one who took it when overdue, the declarations of a prior holder, made while he held the note, after it was due, are admissible in evidence to show payment to such prior holder, or any right of set-off which the maker had against him." (See, also, *Miller v. Bingham*, 29 Vt. 82.)

The note in question being one of which Frick was not an innocent purchaser, it was open to this defense in the same manner and to the same extent as if it had been purchased by him as an overdue note, and these author-

ities we have cited are therefore squarely in point. That such declarations may be shown against a subsequent owner of personal property acquiring his right from the person who has made the declaration, is well established. (*Sumner v. Cook*, 12 Kan. 162; *Alger v. Andrews*, 47 Vt. 238.) And it would be difficult to make a distinction, and we can see no principle upon which it could be founded, between a case which involved the ownership of personal property, and the right to recover upon a promissory note, where the rights of an innocent holder for value did not exist.

It is also contended that the judgment is erroneous because the defendants were allowed to defeat the entire notes, when, if the false representations relied upon existed, the measure of damages would be the difference between the market value of a sound horse like the one sold and a diseased horse in the condition in which the one was sold. The rule urged as the measure of damages would, no doubt, be correct in case an action for damages on account of the breach of the warranty or false representations had been brought. But that is not this case. It is true, the defendants did set up a counter-claim for damages, but they abandoned that on the trial, and stood upon their defense which was the one the case went to the jury upon, of total failure of consideration for these notes, and this is always sustained when the sale has been induced by false representations, and the property is valueless. And if, as a matter of fact, the horse was diseased, from which it died soon after the sale, as the verdict and judgment must be taken now to settle in the affirmative, it required nobody's opinion to warrant the jury in finding that it was worthless. And a note

that is given for property that has been sold under false representations as to its soundness, and which was worthless, is without consideration, and the defense goes to the whole note. (*Snyder v. Hargus,* 26 Kan. 416; *Latham v. Hartford,* 27 Kan. 249.)

When the jury returned their verdict the defense asked that the jury be polled, and one of the jurors, when questioned, answered as follows:

By the court:    "Mr. Worley, is that your verdict? A. I agreed to it, but at the same time I wasn't exactly satisfied with it.

"Q. Are you satisfied with it now?    A. I can't say that I am.

"Q. Do you mean to say, Mr. Worley, that you were forced to sign it as your verdict in any way?    A. Well, I don't know that I was forced to.

"Q. You did it of your own voluntary free will, did you? A. Yes, sir.    I come to this conclusion, that I believed that I would rather sign it than to hang the jury over it. That is, I wasn't from the evidence satisfied—it wasn't proven to my mind that the horse was sound or unsound either.    I confess it was a very hard subject for me to decide."

Upon these questions and answers counsel objected to the receiving of the verdict, and moved the court that the jury be directed to return to their room for further deliberation, which was overruled by the court, and exception saved.    This ruling of the court we think was error.    From the questions and answers it appeared that the juror had voluntarily consented to return this verdict, but that he had agreed to it, not because he was convinced that the horse was unsound, but in order to prevent a hung jury, and that a verdict might be arrived at. It appeared from the answers that the juror was not sat-

isfied with the verdict, and that it was not proven to his mind that the horse was unsound. This was one of the things necessary for the defendants to prove, in order to be entitled to a verdict in the case, for if the horse was not unsound then there was a good and sufficient consideration for the note, and the burden of proving the unsoundness was upon the defendants to establish by a preponderance of the evidence; and the plaintiff was entitled to require that the defendants should offer such proof of the unsoundness of the horse as would satisfy twelve jurors of the existence of that fact. And until this was done he could not be defeated in his right to recover upon these notes. And although the juror had agreed to a verdict, he might withdraw his assent to it at any time before it was received by the court. (*Bishop v. Mugler,* [Kan.] 5 Pac. Rep. 756; *The State v. Austin,* 6 Wis. 203.)

In *Farrell v. Hennesy,* 21 Wis. 639, it was held that:

"Where, upon the jury being polled, one of them declares that the verdict is against his conscience, and that he consents to it only because all the rest have agreed to it, they should be directed to retire and re-consider this verdict."

In the case of *Rothbauer v. The State,* 22 Wis. 446, it is said:

"If a juror says that he thinks the prisoner is not guilty, but assents to the verdict for the sake of an agreement, that is not a proper verdict. The assent must be an assent of the mind to the fact found by the verdict."

In this latter case the juror assented to the verdict, but said that it was still his conviction that the verdict was wrong, and that he had assented to it for the sake of an agreement; and on that ground the case was re-

versed. The same thing appears here. The juror Worley consented to this verdict rather than hang the jury. The court should not have permitted the reception of the verdict, over objection, so long as the juror stated his mind to be in that condition, and when the motion was made to require the jury to deliberate further upon the case, it was the duty of the court to send them out for that purpose. And for this error the cause must be reversed, and a new trial awarded, which is accordingly done.

Keaton, J,, having presided in the court below, not sitting; all the other Justices concurring.