# FRICK-REID SUPPLY CO. *et al.* v. HUNTER.

## No. 4026. Opinion Filed April 13, 1915.

### (148 Pac. 83.)

1. **TRIAL—Direction of Verdict—Evidence.** The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence reasonably to sustain a verdict, should the jury find in accordance therewith.

2. **ATTACHMENT—Wrongful Levy—Property of Third Person—Liability.** For the wrongful levy of a writ of attachment upon property not belonging to the defendant in the writ, the plaintiff who procures the attachment to issue, and in person or through another directs the officer in making the levy, is liable in trespass to the owner of the property attached.

3. **TRESPASS—Persons Benefited—Consent or Ratification—Knowledge—Liability.** To make a party liable for a previous trespass committed by another, though the act was done in his name and for his benefit, it must be proved that he assented to or ratified the act with full knowledge of the facts.

4. **TORTS—Wrongdoer by Ratification—What Constitutes.** In order to constitute one a wrongdoer by ratification, the original act must have been done in his interest, or been intended to further some purpose of his own.

5. **ATTACHMENT—Wrongful Levy—Ratification—Liability.** Where, after an officer makes an unlawful levy on property of a third party, the plaintiff in attachment, with knowledge of the facts, defends the wrongful act, he will be held to have ratified the same, and to be liable in an action of trespass as an original wrongdoer.

6. **SAME—Notice of Disapprobation.** One who would avoid responsibility for an act committed in his interest by an officer should, when knowledge of the wrongful act is brought to his attention, make known his disapprobation thereof; otherwise he will be held to have ratified it.

7. **APPEAL AND ERROR—Objection Below—Necessity—Interest.** Where, in an action for trespass *de bonis asportatis*, the judgment rendered on the verdict of the jury allows interest thereon at 7 per cent. per annum from date of rendition, and no objection thereto is made in the trial court, this court will not, on appeal, consider the alleged error in allowing interest in excess of 6 per cent. per annum.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Frank J. Hunter against the Frick-Reid Supply Company, a corporation, and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*Wm. T. Hutchings,* for plaintiff in error Frick-Reid Supply Co.

*Charles A. Cook,* for defendant in error.

SHARP, J.   On March 20, 1909, the Frick-Reid Supply Company, a corporation, instituted in the county court of Muskogee county an action on an account owing to it by a copartnership known as the Hunter Drilling Company, and at the same time caused to be issued out of said court an order of attachment, which on the 22d day of March thereafter was levied upon a certain well-drilling outfit and tools of the drilling company, and upon about 600 feet of pipe and a steam pump belonging to Frank J. Hunter, the defendant in error, and a partner in the Hunter Drilling Company.   At the time of the levy, Hunter was using the pipe and pump in connection with other tools in drilling an oil well.   When the levy was made, the pipe and pump were disconnected and removed from the premises.   On the 10th day of June following, on a hearing had before the county court, the order of attachment was discharged, and on October 13th of the same year the action was dismissed upon plaintiff's failure to appear and prosecute.   This action was brought by Frank J. Hunter against the attaching creditor and Charles A. Weil, his copartner in the drilling company, to recover damages sustained by him on account of the unauthorized act of the officer in levying upon and taking from his possession his individual property. At common law such an action was known as trespass *de bonis asportatis.*   While the action was pending, the defendant, Charles A. Weil, died, and thereafter it was revived in the name of Blanche B. Weil, executrix of the last

will and testament of Charles A. Weil, deceased. Trial being had, a verdict was returned against the defendants in the sum of $821. From the judgment, both defendants bring error.

The plaintiff in error Blanche B. Weil, executrix, has filed no brief in this court, and therefore, as to her, the appeal will be considered to have been abandoned.

Four errors are assigned in the brief of plaintiff in error Frick-Reid Supply Company. The first involves the giving of instruction No. 2, and the second the refusal of the court to peremptorily instruct the jury to return a verdict in favor of the defendant Frick-Reid Supply Company. It is obvious, however, from the brief, that plaintiff in error relies, not upon the giving of the instruction complained of, but upon the failure to give the peremptory instruction. The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may reasonably be drawn therefrom, there is enough competent evidence reasonably to sustain a verdict, should the jury find in accordance therewith. *Frick v. Reynolds et al.*, 6 Okla. 640, 52 Pac. 391; *Richardson et al. v. Fellner et al.*, 9 Okla. 513, 60 Pac. 270; *Solts v. Southwestern Cotton Oil Co.*, 28 Okla. 706, 115 Pac. 776; *Moore v. First Nat. Bank of Iowa City et al.*, 30 Okla. 623, 121 Pac. 626.

The original action, as well as the attachment proceedings, was procured to be brought at the instance of Charles A. Weil, a partner of Frank J. Hunter in the drilling company. Mr. Huckleberry, the attorney for the supply company, testified that at the request of Mr. Weil he went to the latter's office and talked with him concerning the claim of Frick-Reid Supply Company against the Hunter Drilling Company; that Weil told him who composed the partner-

ship, and the amount of its indebtedness to the supply company; that he (Weil) said he did not want to pay the account himself, but believed that, if suit were brought against the drilling company and its property attached, it would result in a settlement of the affairs of the company between the partners, and the payment of the account; that Weil requested that suit be brought promptly, and furnished the witness with the data from which both the petition and affidavit for attachment were drawn. Weil also informed the witness that he would furnish a man who knew the partnership property, who would go with the officer levying the attachment, and point it out to him, and who could thereafter be appointed custodian; that Weil gave the witness the name of the party, and said, when the officer was ready to go, to advise him, and he would direct his man to go with the officer. Witness said he thought the name of the man referred to by Mr. Weil was John Schwab, and that perhaps he (the witness) afterwards saw the man himself, at least he understood that Schwab was familiar with the property and could point it out to the officer, so that no mistake would be made in levying thereon; that Weil also told the witness what property belonged to the drilling company. Clark Compton, the deputy sheriff making the levy, testified that, at Weil's request, Schwab accompanied him to and pointed out the property to be attached, which, it proved afterwards, included the individual property of Hunter. That Schwab, acting for Weil, with the knowledge and consent of the plaintiff's attorney, accompanied the officer and was instrumental in causing the attachment to be levied upon Hunter's property, stands undenied. That Hunter was damaged as a result of the levy on his property is not questioned by the appeal. Nor can there be any question as to the liability of Weil for the part taken by him in the unlawful seizure and removal of Hunter's property.

With reference to the liability of the supply company, the rule appears to be settled that one who places in the hands of an officer a valid writ, without direction as to the manner of its service, will not be liable for a tort committed by the latter while engaged in the execution thereof. It is indeed a very general rule that when an officer oversteps the authority of his writ and commits a trespass, as by levying on property not belonging to the debtor, the plaintiff in the writ, who neither advised, directed, nor assisted the officer in his departure from the command of the writ, is not responsible with the officer for the trespass. Cooley on Torts, p. 218; Drake on Attachments, sec. 196; note to *Kirkwood v. Miller,* 5 Sneed (Tenn.) 455, 73 Am. Dec. 134, 141; *Murray v. Mace,* 41 Neb. 60, 59 N. W. 387, 43 Am. St. Rep. 664; *Butler v. Borders,* 6 Blackf. (Ind.) 160; *Adams v. Savery House Hotel Co.,* 107 Wis. 109, 82 N. W. 703; *Munns v. Loveland,* 15 Utah, 250, 49 Pac. 743; *Snydacker v. Brosse,* 51 Ill. 357, 99 Am. Dec. 551; *Deal v. Bogue,* 20 Pa. 228, 57 Am. Dec. 702; *Lovejoy v. Murray,* 3 Wall. 19, 18 L. Ed. 129.

On the other hand, as said in *Stump v. Porter,* 31 Okla. 157, 120 Pac. 639, the plaintiff is liable where property is attached not belonging to the defendant, where he either actively participated, directed the levy to be made, ratified or knowingly received the benefits thereof after the same was made.

Plaintiff's petition is drawn upon the theory that the supply company and Weil acted in concert in procuring the issuance and levy of the attachment, and this charge appears to be borne out by the evidence. Weil, as we have already seen, was the procuring cause, both in causing the action to be brought and in directing the levy made thereunder. That which he did with reference to sending Schwab along with the officer to point out the property to be levied upon was done with the full knowledge and con-

sent and, we may add, approval of plaintiff's attorney, who alone represented the plaintiff at the time. Mr. Huckleberry, being asked if Weil furnished this man, stated that he did. Being asked the following questions: "Q. In what way did he furnish this man, Mr. Huckleberry?" he answered: "A. He gave the man's name at the time and told me when the officer was ready to go to call the man up or call his office up and he would direct the man to go with the officer, and my remembrance is that I gave the name of the man to the officer, and I think perhaps I saw the man myself afterwards."

This and other testimony tends to show that Schwab, though perhaps directly controlled by Weil, was, in directing the levy on Hunter's property, representing the supply company as well as Weil. It cannot, therefore, be said that the plaintiff in no way advised, directed, or assisted the officer in his departure from the command of his writ, for indeed, as we have seen, it was this very fact that caused the trespass to be committed. Schwab's act, under the testimony, was that of both Weil and the supply company, for which they are liable as cotrespassers.

The supply company, in its answer, put in issue plaintiff's claim of ownership, both by general denial and by affirmative plea. At no time, until the case reached this court, did said company disavow the act of the officer done in its behalf. Whatever the officer was by this process commanded to do was understood to be directed by the attaching plaintiff, who sued out the writ and caused it to be delivered to the officer, that the exigency thereof might be complied with. Cooley on Torts, pp. 217, 218. Referring to what constitutes a participation in the commission of a wrongful act, when several parties join in the commission of such an act, it may be observed that they may do so in different ways, at different times, and in very unequal proportions; that one may plan, another may procure the man

to execute, others may be the actual instruments in accomplishing the mischief, but the blame will rest upon all as joint actors; and in some cases one may also become a joint wrongdoer by consenting to and ratifying what has been done by others. However, this cannot be done by merely approving a wrong or by expressing pleasure or satisfaction at its accomplishment. On the other hand, as expressed by Judge Cooley in his work on Torts, p. 214:

"In order to constitute one a wrongdoer by ratification, the original act must have been done in his interest or been intended to further some purpose of his own."

Or in the language of Lord Coke:

"He that agreeth to a trespass after it is done is no trespasser unless the trespass was done to his use or for his benefit, and then his agreement subsequent amounteth to a commandment." (4 Inst. 317.)

See *Allred v. Bray,* 41 Mo. 484, 97 Am. Dec. 283; *Beveridge et al. v. Rawson,* 51 Ill. 504; *Gibbs v. Randlett,* 58 N. H. 407.

The ratification of the wrongful act should also be with full knowledge of the facts, or with the purpose of the party, without inquiry, to take the consequences upon himself. Cooley on Torts, p. 216; *Grund et al. v. Van Vleck,* 69 Ill. 478; *Dalley et al. v. Young,* 3 Ill. App. 39; *Tucker v. Jerris,* 75 Me. 184; *Fox et al. v. Jackson,* 8 Barb. (N. Y.) 355; *Adams v. Freeman,* 9 Johns. (N. Y.) 117; *Hyde v. Cooper,* 26 Vt. 552.

One who would avoid responsibility for an act committed in his interest by an officer should, when knowledge of the wrongful act is brought to his attention, in some way make known his disapprobation thereof; otherwise he will be held to have ratified it. Ratifications may consist of various acts, and may be shown in many ways. Drake on Attachment, sec. 196.

In *Taylor et al. v. Ryan*, 15 Neb. 573, 19 N. W. 475, an action of trespass *de bonis asportatis* was brought against a constable and one who was plaintiff in an attachment action, wherein the property of the plaintiff in the action for trespass, who was a stranger to the attachment proceedings, was wrongfully seized and sold by the constable as the property of the defendant in the attachment proceedings. The constable and the original plaintiff answered jointly, admitting the taking, but denied the ownership of the defendant in the attachment action, and it was held that the plaintiff in the original action would be held to have adopted the taking of the constable, and to be jointly liable with him.

In *Perrin v. Claflin*, 11 Mo. 13, the action was also trespass *de bonis asportatis*, to recover the value of certain goods seized under an order of attachment, and damages for the seizure. The opinion reviews many of the early English authorities, and concludes:

"This law does not command the officer to take the goods of a person not named in the writ, and, if the officer takes the wrong person's goods, he is himself responsible for the trespass. If the party interested in the execution gives directions to the officer to take such goods, he also is liable; and if, where there has been no previous direction, there is a subsequent ratification of the acts of the officer, it is difficult to perceive any principle which shall exempt from responsibility the party who ratifies what has been done, and hold him liable who commands the act to be done. It is for the benefit of the party to the action in both cases, though in both cases the officer professes to act officially. Shall the conduct of the Claflins, then, in appearing to and defending the interpleader, be no evidence of a ratification of what the sheriff had done? They were not bound to defend the interpleader. They were necessarily parties to it, but, like other defendants, they could have disclaimed title and disclaimed the acts of the sheriff. They, however, defended the suit, and after a verdict against them applied for and obtained a new trial. Is this no evidence that they were willing to share the responsibility with the sheriff? We think it was."

In *Hermann et al. v. Gilbert,* 8 Hun (N. Y.) 253, it was said that when the seizure is made of property, and it is claimed by a third party, and he is compelled to commence an action to recover it, and the person for whose benefit the seizure is made not only refuses to surrender it but, by answer to the suit thus commenced, asserts it to be the property of the debtor, the ratification of the levy is complete—the assent to it established beyond doubt.

In *Brainerd v. Dunning,* 30 N. Y. 211, the sheriff had levied on the goods of one not a party to the execution, and the plaintiff, with knowledge of the fact, refused to instruct him not to sell. The property seized was sold, and the plaintiff accepted the proceeds, and was subsequently held liable in an action for trespass.

In *Cole et al. v. Edwards,* 52 Neb. 711, 72 N. W. 1045, it was said that the plaintiff in an attachment suit has control of the writ, and may require the release of the levy. Therefore, where the goods of a stranger have been levied upon, and the plaintiff, with knowledge of that fact, refuses to release them on demand, such a refusal constitutes a ratification of the wrongful levy. While in *Peterson v. Foli,* 67 Iowa, 402, 25 N. W. 677, it was held that one who procures an order to be entered, which directed the sale of property and the execution to be issued, upon which it was sold, is responsible for its sale, and by these acts ratifies the act of the officer in levying an attachment upon it.

In *Robinson v. Keith & Snell,* 25 Iowa, 321, it was held that attaching creditors, who are made codefendants in an action of detinue with the sheriff who levied the writ, and who appear and justify thereunder, are properly liable to judgment, though they had no actual knowledge of the seizure of the property by the sheriff. To the same effect is *Reithmann et al. v. Godsman,* 23 Colo. 202, 46 Pac. 684.

The evidence as to what appearances were made in the original action consists alone of the order discharging

the attachment and the subsequent order dismissing the action. From the answer of the supply company and the exhibits to plaintiff's petition, which are admitted to be correct, we think there is sufficient to charge the supply company with having ratified the officer's unauthorized act, and that with knowledge of the facts. The evidence was directed toward a vindication, rather than a repudiation of the act of the officer. While no benefits were received by the supply company, it was because of the unsuccessful result of the trial. It assumed the risk of the result, and even in the present action it urged that the property attached belonged to the partnership. Such, as we have seen, is sufficient to make out a case of ratification binding upon the supply company.

Counsel for defendant in error rely largely for an affirmance upon the claim that the supply company gave, at about the time of the levy, an indemnity bond to the sheriff. Granting the law in such event to be as contended for, we do not, however, find the proof to justify the statement that such bond was given.

As to the point that the judgment should bear six and not seven per cent. interest per annum from date of rendition, we find that no objection to the allowance or rate of interest that the judgment should bear was made in the lower court either at the time the journal entry of judgment was prepared and filed or in the motion for a new trial. It is a rule of very common application that objections must be made in the trial court in order to reserve questions for review. This assignment cannot, therefore, be considered.

The remaining assignment of error we do not understand to be insisted upon, and it will not, therefore, be considered.

The judgment of the trial court is affirmed.

All the Justices concur.