### HOHENLEITNER v. SOUTHERN PAC. CO.

(Circuit Court, D. Oregon. March 7, 1910.)

No. 3,575.

1. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—AUTOMATIC COUPLERS.

Safety Appliance Act Cong. March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), as amended by Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1909, p. 1143), requiring railroads to use automatic couplers on interstate equipment, requires all cars regularly used on any railroad engaged in interstate commerce and all other cars used in connection therewith to couple automatically by impact, and to be coupled and uncoupled without the necessity of men going between them, whether they be loaded or empty, and though they be not actually engaged in such commerce at the time.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

2. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—VIOLATION.

Safety Appliance Act Cong. March 2, 1893, as amended by Act March 2, 1903, requiring interstate railroad equipment to be fitted with automatic couplers, coupling by impact without the necessity of men going between the cars, is violated when cars are hauled or used by carrier engaged in such commerce which will not so couple, whether the failure to do so results from the character of the car, the kind of equipment used, or the fact that the tracks are so laid on a curve that the couplers will not meet without men going between the cars to adjust them.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

At Law. Action by Matilda Hohenleitner as administratrix of the Estate of Bernard Hohenleitner, deceased, against the Southern Pacific Company. On demurrer to complaint. Overruled.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Henry E. McGinn, for plaintiff.

Wm. D. Fenton, R. A. Leiter, J. E. Fenton, and Ben C. Dey, for defendant.

BEAN, District Judge. The plaintiff's intestate, a brakeman of the defendant company, was killed in its yards in East Portland by going between cars alleged to be used in interstate commerce for the purpose of coupling them. There is no charge in the complaint that the cars were not provided with couplers which would couple by impact when brought together, but the averment is that the lead track in the yards, where the plaintiff's intestate was at work at the time of his death, had a curve of about 20°, so that when the couplers, in use on the cars by which he was killed, met, they passed by each other and would not couple without a person going between the cars to adjust them, and that while the deceased was between the cars for that purpose he was struck and killed.

The defendant contends that the facts stated do not bring the case within the provisions of Act Cong. March 2, 1893, and subsequent amendments, commonly known as the "Safety Appliance Act." The original act provided that on or after the 1st day of July, 1908, it shall be unlawful for any common carrier engaged in interstate commerce to haul or permit to be hauled or used on its lines "any car used in moving interstate traffic" not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the cars. 27 Stat. 731, c. 196 (U. S. Comp. St. 1901, p. 3174). By the amendment of March 2, 1903, it is declared that the provisions of the previous act relating to automatic couplers shall apply to all locomotives, tenders, cars, and similar vehicles "used on any railroad engaged in interstate commerce." 32 Stat. 943, c. 976 (U. S. Comp. St. Supp. 1909, p. 1143).

This law has been frequently before the courts for construction and application, and without referring to the adjudications in detail it is sufficient for the purposes of this case that it requires all cars regularly used on any railroad engaged in interstate commerce, and all other cars used in connection therewith, to couple automatically by impact, and to be coupled and uncoupled without the necessity of men going between them, whether they are loaded or empty, and although not actually engaged in such commerce at the time. Johnson v. S. P., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; U. S. v. Gt. Nor. (D. C.) 145 Fed. 438; C., M. & St. P. v. Voelker, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264; U. S. v. S. Ry. (D. C.) 135 Fed. 122; Kelley v. Gt. Nor. (C. C.) 152 Fed. 211; Snead v. Cen. of Ga. (C. C.) 151 Fed. 608; U. S. v. St. L., I. M. & S. R. (D. C.) 154 Fed. 516; U. S. v. Railroad (C. C. A., 5th Circuit) 174 Fed. 638, decided December 21, 1909. The law does not require the carriers to adopt any specific design of coupler. That matter is left to them. They may adopt any design, kind, or make which they please, provided the cars equipped therewith shall couple automatically by impact, and can be coupled and uncoupled without the necessity of persons going between them. The cars must not only be provided with couplers, but the couplers must be such that, when used, they will couple together automatically. If the cars hauled

or used by a carrier engaged in such commerce will not so couple, the law is violated, whether it is due to the character of the car, the kind of equipment used, or, in my opinion, the manner in which tracks employés are required to use in coupling or uncoupling cars or making up trains are located or built. The ultimate end sought by the law is the coupling and uncoupling of cars used in interstate traffic without the necessity of going between them. This is the test of the compliance with it. As repeatedly pointed out by the courts, especially the Supreme Court in the Johnson Case, the design is to prevent the necessity of railroad employés going between cars in order to make a coupling, and thus protect their lives and limbs. The point to be accomplished by the law is that employés of railroad companies engaged in interstate commerce shall not be required to go between the cars for the purpose of coupling or uncoupling them, and this would be circumvented if the companies are permitted to so construct and maintain their tracks in yards or depot grounds, or other places where employés are required in the course of their employment to couple or uncouple cars, in such a condition that the cars used by them will not couple automatically with the equipment provided.

I conclude, therefore, that the demurrer is not well taken, and should be overruled.