**CHICAGO, R. I. & P. RY. CO. v. RAY.**

No. 8363—Opinion Filed Oct. 9, 1917.

Rehearing Denied Nov. 27, 1917.

(168 Pac. 999.)

(Syllabus.)

**Master and Servant—Negligence — Defective Couplings—Federal Safety Appliance Statute—Assumption of Risk.**

In a suit in damages for injuries resulting in the death of plaintiff's intestate, on the ground that defendant, an interstate carrier, had been negligent, in that it used upon its lines certain freight cars not equipped with couplers coupling automatically by impact (Act Cong. March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1916, §§ 8605-8612]), and that deceased, an employe of defendant, was killed while attempting to couple said cars, the evidence reasonably tended to prove that the cars did not couple automatically by impact, and by reason thereof deceased was caught between them and killed, held sufficient to take to the jury the question of the primary negligence of defendant. Held, further, that the act took away from defendant the defense of assumption of risk by deceased.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by L. J. Ray, administratrix of the estate of H. E. Ray, deceased, against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

R. J. Roberts and E. H. Bond, for plaintiff in error.

Ledbetter, Stuart & Bell and Womack & Brown, for defendant in error.

TURNER, J. On February 5, 1915, defendant in error, L. J. Ray, as administratrix of the estate of H. E. Ray, deceased, sued plaintiff in error, Chicago, Rock Island & Pacific Railway Company, in the district court of Stephens county in damages for the negligent killing of her said son, H. E. Ray. As grounds for recovery, the petition alleged:

"That on said 8th day of July, 1914, the said H. E. Ray was acting as brakeman for the defendant on one of its trains at Kingfisher; that said train at said time was engaged in switching operation, and was backing, under the direction of its conductor, who was in the employ of the defendant, a string of three or four cars in a northern direction on one of the switches east of the main line at said Kingfisher and about 75 feet south of the passenger depot at said place; that at said time it was the intention of the conductor of said train to join the front car north to a string of cars on said switch track, said string of cars on said switch track extending south almost to the north side of East Broadway street in said Kingfisher, and the said H. E. Ray was standing near the north end of said string of cars to assist in making the coupling between said cars; that the front car being pushed north and the south car on said string of cars that were to be coupled to were not equipped with couplers coupling automatically by impact, and when said cars came together, or were about to come together, the said H. E. Ray stepped between said cars in order to assist said couplers on said two cars in

making a coupling, but the coupling equipment on said cars would not work and did not work, and said cars did not couple together automatically by impact when they came together, and the said H. E. Ray, while so engaged, was caught between said cars or said couplers, and was so badly mashed, bruised, and injured that he shortly died from the effects thereof."

And further:

"That the. defendant violated the federal Safety Appliance Act in not having said cars so equipped that the couplers would couple together automatically by impact, and on that account was guilty of negligence, and that said failure and negligence were the proximate cause of the said H. E. Ray's said injuries and death. For all of which the said defendant has become liable."

For answer, defendant, after general denial, pleaded contributory negligence in this:

"That said deceased, in violation of the rules of this defendant, which said rules were well known to said deceased, went between moving cars without taking proper precaution for his own safety, and that said negligence and carelessness on the part of said deceased directly and proximately contributed to cause the injury and death of which plaintiff now complains."

Defendant further alleged assumption of risk. After reply, a general denial, there was trial to a jury and judgment for plaintiff. Defendant brings the case here, and for reversal contends that, as there was no evidence reasonably tending to show a violation of said Safety Appliance Act, and hence primary negligence on the part of defendant, its motion for a directed verdict should have been sustained.

Defendant admits that its cars in question were used in moving interstate traffic, but denies that they were not equipped as provided by section 2 of Act March 2, 1893, 27 Stat. 531 (U. S. Comp. St. 1916, § 8606), which reads:

"That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common ·carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

As stated in Atlantic City, etc., Ry. Co. v. Parker, 242 U. S. 56, 37 Sup. Ct. 69, 61 L. Ed. 150:

"If there was evidence that the railroad failed to furnish such 'couplers coupling automatically by impact,' as the statute requires, * * * nothing else need be considered."

In N., C. & St. L. R. v. Henry, 158 Ky. 88, 164 S. W. 310, the court said:

"In construing this act the federal Supreme Court has held in a number of cases that it imposes an absolute duty, not dependable upon the exercise of diligence or the existence of wrong intent, on the part of the railroad company. Whether the carrier knew its cars were not so equipped is immaterial. It is the duty of the carrier to know its couplers are in order, and to keep them in order at all times. St. Louis R. Co. v. Taylor, 210 U. S. 281 [28 Sup. Ct. 616, 52 L. Ed. 1061]; C., B. & Q. R. Co. v. U. S., 220 U. S. 559 [31 Sup. Ct. 612, 55 L. Ed. 582]; Delk v. St. Louis, etc., R. Co., 220 U. S. 580 [31 Sup. Ct. 617, 55 L. Ed. 590]; Johnson v. Southern Pacific Co., 196 U. S. 1 [25 Sup. Ct. 158, 49 L. Ed. 363]. It is likewise well settled by the same court that the failure of the coupler to work at any time is sufficient to sustain the charge of negligence. Chicago, Rock Island & Pacific R. Co. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840 [57 L. Ed. 1204]; C., B. & Q. R. Co. v. U. S., supra."

The evidence discloses:    That deceased was employed by defendant as a brakeman on one of its freight trains, running between Kingfisher and Chandler. He was about 20 years old, in good health, and had been employed as such about two or three weeks prior to the date of his injury. The main line of defendant runs north and south through Kingfisher. The depot of defendant is on the west side of the track, north of Broadway. The team track, upon which the injury occurred, starts south of Broadway and connects with the main line north of the depot. At the time of the injury a string of freight cars was standing on this track, extending northward from Broadway. An engine and three or four freight cars were being backed north on this team track, with the intention of coupling onto this string of cars. About the time they bumped, deceased, who was standing at the edge of Broadway east of the tracks, facing west, stepped in between to assist in making the coupling and was killed, owing to the fact that they failed to couple automatically by impact. A witness who saw the accident from a distance of about half a block west, and who went to deceased at once, said when he got there the cars to be coupled stood about three feet apart, and that he had seen cars fail to couple automatically by impact at the same place before. Another of plaintiff's witnesses testified that the track was straight at the place of the accident, but immediately south the track

curved like a letter S; that when cars are cut off a curve and put back on a straight track, the drawbar has to be pushed around and raised in place before they will couple; that it weighs about 150 pounds.

Defendant's engineer and fireman, although present at the trial, did not testify. Defendant's conductor in charge of the train, not only contradicted plaintiff's witnesses, but contradicted himself. Among other things, he testified that the coupling on the backing car had been since used, and that it was all right, but that the coupling on the car sought to be coupled to had not been since used and that the track was slightly curved at the place of the accident. The testimony further discloses that the coupler on the backing car was in perfect condition, but there is no evidence as to the condition of the coupler on the other car. The theory of plaintiff was that the couplers came together and failed to couple automatically by impact; the theory of defendant was that, if they came together by impact, which the conductor denies they did, they would have coupled, but for the intervening body of deceased. As the testimony was conflicting, but, on the whole, sufficient to send the question to the jury of whether or not defendant was negligent in failing to furnish couplings that would couple by impact, we cannot say that the court erred in refusing to direct a verdict in favor of defendant. For it is well settled that:

"It is only when the evidence, with all the inferences the jury could justifiably draw from it, will be insufficient to support a verdict for plaintiff, * * * that the court is authorized to direct a verdict for defendant; and, unless the conclusion follows, as matter of law, that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish. the case should be left to the jury under proper instructions." Booker Tobacco Co. v. Waller, 38 Okla. 47, 131 Pac. 537.

See, also, Fidelity Mut. Life Ins. Co. v. Stegall et al., 27 Okla. 151, 111 Pac. 389; Frick-Reid Supply Co. et al. v. Hunter, 47 Okla. 151, 148 Pac. 83.

We might add that, while circumstantial evidence was largely relied upon to prove the cause of his injury, we think therefrom the jury might fairly infer that, at the time he was injured, deceased was engaged in adjusting these couplings so they would couple by impact. There is also evidence to the effect that the track upon which defendant was backing its cars north was curved, that the car sought to be coupled to was standing on a straight track, and that when cars are cut off a curve, and put back on a

straight track, the drawbar has to be pushed around, before they will couple, by one who must necessarily go between the cars to adjust it. Construing the act above referred to, in Hohenleitner v. Southern Pac. Co. (C. C.) 177 Fed. 796, the court held:

"Safety Appliance Act Cong. March 2, 1893, as amended by Act March 2, 1903 [U. S. Comp. St. 1916, §§ 8613-8615], requiring interstate railroad equipment to be fitted with automatic couplers, coupling by impact without the necessity of men going between the cars, is violated when cars are hauled or used by carrier engaged in such commerce which will not so couple, whether the failure to do so results from the character of the car, the kind of equipment used, or the fact that the tracks are so laid on a curve that the couplers will not meet without men going between the cars to adjust them."

We are therefore of opinion that the evidence was sufficient to go to the jury on the question of the primary negligence of defendant, and their finding will not be disturbed.

The defense of assumption of risk is not available here. In Schlemmer v. Buffalo, etc., Ry. Co., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596, the court held:

"The Safety Appliance Acts (Act March 2, 1893, c. 196, 27 Stat. 531; Act April 1, 1896, c. 87, 29 Stat. 85 [U. S. Comp. St. 1916, § 8610]; Act March 2, 1903, c. 976, 32 Stat. 943) took away from the carrier the defense of assumption of risk by the employe. * * *"

See Act April 22, 1908, § 2, 35 Stat. 65, c. 149 (U. S. Comp. St. 1916, § 8658).

We consider nothing said in the brief of counsel for defendant concerning the doctrine of the "last clear chance," for the reason that no point was made thereon in the trial court by a requested instruction or otherwise.

Some complaint is made of the refusal of the court to give defendant's requested instruction No. 3, but, as no authorities are cited sustaining the position taken by defendant in support of the alleged error, the same will not be considered.

Defendant also contends that the court erred in giving instruction No. 6. It reads:

"In this case you are instructed that should you find for the plaintiff, in determining what damages, if any, she should receive and would be entitled to recover, you may take into consideration the pecuniary value of the son's services until he reached the age of 21 years; what sum if any of such services would have been received by

plaintiff, and if you believe from the evidence that plaintiff had a reasonable expectation of receiving from her son, had he lived, contributions to her and her husband's wants and necessities after he reached his majority, such sum as in your judgment would have been received out of the earnings of her son by her and her husband after arriving at such majority."

Plaintiff testified that deceased lived at home while working on the section, spent his money at home, and had told defendant that he intended to take care of her; that he often contributed to her support, and would give her money whenever she needed it; that he intended to move her and husband and family to El Reno and care for them there. From which we see that the contention of defendant that no evidence of pecuniary loss was introduced by plaintiff is without merit. Am. R. R. of Porto Rico v. Didricksen, 227 U. S. 145, 33 Sup. Ct. 224, 57 L. Ed. 456, was an action by the parents of deceased under the Employers' Liability Act (U. S. Comp. St. 1916, §§ 8657-8665) to recover damages for the death of their son. The court said:

"The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employe. The damage is limited strictly to the financial loss thus sustained."

And the same is true under the act in question. Said instruction No. 6 followed the law as laid down in the above case, and the court did not err in giving the same to the jury.

Finding no error in the record requiring a reversal of the cause, the judgment is affirmed.

All the Justices concur.