## CHICAGO, R. I. & P. RY. CO. v. GUTHRIDGE.

No. 8328—Opinion Filed Jan. 13, 1919.

Rehearing Denied March 25, 1919.

(179 Pac. 590.)

(Syllabus.)

1. **Master and Servant—Federal Safety Appliance Act — Negligence — Proximate Cause—Question for Jury.**

Record examined, and held: That there was not sufficient evidence tending to show that the injury and death of the deceased was the proximate result of any violation of the federal Safety Appliance Act [U. S. Comp. St. §§ 8605-8615] by the railway company, to take the case to the jury on that question. That there was no evidence reasonably tending to establish any causal connection between the other alleged acts of negligence and the injury which is alleged to have resulted therefrom.

2. **Master and Servant—Negligence—Proximate Cause.**

The fact that a defendant has been guilty of negligence, followed by an injury, does not make him liable for that injury, unless the connection of cause and effect is established. There must always, in actions of this kind, be a causal connection between the alleged act of negligence and the injury which is supposed to have resulted therefrom.

Error from District Court, Grady County; Will Linn, Judge.

Action by Mrs. C. W. Guthridge, administratrix, against the Chicago, Rock Island & Pacific Railway Company. Verdict and judgment for plaintiff, and defendant brings error. Reversed and remanded, with direction to grant a new trial.

C. O. Blake, W. H. Moore, R. J. Roberts, K. W. Shartel, and Barefoot & Carmichael, for plaintiff in error.

Ledbetter, Stuart & Bell, for defendant in error.

KANE, J. This was an action for damages for personal injuries resulting in death, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below.

Hereafter, for convenience the parties will be designated "plaintiff" and "defendant." respectively, as they appeared in the trial court.

The petition alleged, in substance, that the deceased was the fireman upon the first engine of a double header freight train at the time of his injuries; that the defendant in violation of the federal Safety Appliance Act of 1893 (Act March 2, 1893, c. 196. 27 Stat. 531), as amended by the act of Congress of 1903 (Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp St. §§ 8605-8615]), failed to equip the engine upon which the deceased was working with power driving-wheel train brakes for operating the train brake system so that the engineer on said engine could use and operate the brakes of the cars, engine, and tender on said train and control the speed of said train from his seat in the cab; that, on account of this violation of the Safety Appliance Act, the air hose between the first and second engine of said double header became detached, causing said train to suddenly slow up and stop with a lurch, thereby causing said James O. Guthridge to be thrown from the tender of his engine, where he was standing in the performance of his duties, and thereby fatally injuring and kill-

ing him. The petition further alleged that the defendant was also negligent, in that its agents and servants caused and permitted the top and surface of the back end of the tender occupied by the water tank to be covered with half a ton or more of lump coal, and also caused and permitted the electric headlight on the engine immediately following the engine on which the deceased was working to be burning at full force and so brilliantly that the said place on the back end of said tender became a dangerous place to work; that, while said deceased was at said place in the performance of his duty, he was blinded and dazed by the brilliance of said headlight, and on account of said headlight, and on account of said coal being scattered on said place, said J. P. Guthridge was caused to stumble and fall from said tender, when said train jerked and lurched as aforesaid, and was injured and killed as aforesaid.

The answer of the defendant consisted of a general denial and a plea of contributory negligence and assumption of risk on the part of the plaintiff. Upon trial to a jury there was a verdict for the plaintiff upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

In the view we take of the case, it will only be necessary to notice the first and second assignments of error relied upon for reversal, which are stated by counsel for the defendant in their brief as follows:

"(1) The court erred in overruling defendant's demurrer to the evidence.

"(2) The court erred in refusing to give defendant's requested instruction No. 1 to the effect that, under the law and evidence in this case, the verdict must be for the defendant."

Both of these specifications of error raise the question of the sufficiency of the evidence to support the verdict and will be considered together.

After a careful examination of the record, we are convinced that the evidence adduced at the trial wholly fails to show any violation of the Safety Appliance Act, or to show any other act or acts of negligence on the part of the defendant which it may be reasonably said was the proximate cause of the injury and death of the deceased.

The particular part of the act which it was alleged was violated requires all railway companies engaged in interstate commerce to equip their trains with power driving-wheel train brakes for operating the train system, so that the engineer can use and operate the brakes of the cars, engines, and tender and control the speed of the train from his place in the cab of the engine. In our opinion the evidence conclusively shows that this train was fully equipped with an adequate train brake system in the manner required by the act and that jerking, jarring, and lurching of the train complained of were but the ordinary and natural consequences to be expected from the severance of the air connection, between the two locomotives when the train is so equipped.

The uncontradicted evidence shows the accident to have occurred in the following manner:

The deceased, while the train was in motion climbed from his place in the cab of the engine, onto the tender thereof with a sack of wet sawdust, which he threw over the end of the tender between the two engines. The sack in falling came in contact with the air hose connecting his engine with the balance of the train in such a manner as to disconnect the same, thereby causing the train to stop suddenly and throw the decedent upon the track between the two engines. This, as is contended by counsel for the defendant, was the proximate cause of the injury, and counsel for plaintiff seem to concede the correctness of this proposition, if it is also conceded that the uncontradicted evidence establishes the facts to be as stated above. But they say that there was evidence to the effect that the dropping of the sack of wet sawdust on the air hose did not cause it to part, but, on the contrary, this would have the effect of fastening it more securely. In support of this assertion, they point to the fact that the sack of sawdust was found something like 150 feet back of where the deceased was thrown from the tender, as indicating it had nothing to do with the uncoupling of the air hose.

Mr. Benge, the engineer of the second engine, the only eye witness to the accident, testified, in substance, that he saw the deceased when he came onto the tender of his engine, and what followed is detailed by him as follows:

"I saw him crawl over the coal board and was standing at the back end of the tender, when he dropped the sack just at that time the air hose was disconnected and practically made a stop of the engine; not stop it, but it retarded them a good deal; and that

threw him ahead, and he disappeared behind the smokestack of my engine, and a second or two after that the slack out of the train run up against the engine and it threw them ahead again.

"Q. And about that time this sack was dropped, the hose broke in two? A. Yes, sir.

"Q. And the brakes were set, A. Yes, sir.

"Q. And just about this time you saw him stagger? A. Yes, sir.

"Q. And fell over? A. He just staggered and fell over against this coal board; that is about three feet high.

"Q. You did not see how far he went? A No, sir; he got out of my view behind the smoke box. That's the last I seen of him.

"Q. After the train stopped, what did you do? A. I got down on the ground. I heard the pilot and seen the hose was disconnected.

"Q. Where was the hose disconnected? A. Between the engines.

"Q. Between the first engine and your engine? A. Yes, sir.

"Q. Did you see anything of James O. Guthridge? A. No, sir. I asked Mr. Fitch where his fireman was as soon as I got down there. I seen him at the first application of the brakes, and then he disappeared around the smoke box, and the train moved ahead a little, and I did not see what become of him, and I asked Mr. Fitch where his fireman was, and while we were talking he hollered for help on the other side, and we went around there.

"Q. Where did you find him with reference to the tender of the engine? A. He was about even with the air pump on the 1,700 engine, just at the front end of the cab, on the left side."

We have examined the circumstances which counsel for plaintiff contend contradict this positive evidence of Engineer Benge, but are unable to agree with the conclusion they reached as to its effect. We think there is no reasonable ground for doubting that the accident occurred precisely as Engineer Benge says it did. But even if we assume, as counsel contends, that there was some evidence tending to show that throwing the sack of sawdust over board did not cause the connection of the air hose to become separated. still we are unable to agree with them that the mere fact that the air connection became disconnected in some unexplained manner is of itself sufficient evidence to charge the defendant with a violation of the federal Appliance Act, without any further evidence tending to show any

defects in the air brake system of the train. Counsel base their assertion to the contrary upon the assumption that the cases which held that proof of the failure of a coupler, which the same act requires to couple by impact, to work at all times, sustains the charge of a violation of the act in this respect. Chicago, Rock Island & Pacific Ry. Co. v. Ray, 67 Okla. 77, 168 Pac. 999; Delk v. St. L. & S. F. Ry. Co., 220 U. S. 589, 31 Sup. Ct. 617, 55 L. Ed. 590; St Louis, Iron Mountain & Southern Ry. Co. v. Taylor, Adm'x, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; C., R. I. & P. Ry. Co. v. Brown, 229 U. S. 320, 33 Sup. Ct. 840, 57 L. Ed. 1204. We are unable to perceive the analogy between these cases and the case at bar. The part of the Safety Appliance Act relating to couplers makes it the duty of the railway company to equip their cars with coupler that will at all times, when operated in the ordinary reasonable manner, couple under impact. The mere fact that they did not couple under impact when so operated would seem to us to be some evidence tending to show a violation of this part of the act. The part of the Safety Appliance Act herein involved provides, in substance, as we have seen, that it shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose. It has not been held in so far as we are aware, and we are unable to perceive that there is any reasonable grounds for holding, that, where it is shown that a sufficient number of cars in a train have been equipped with power or train brakes, and the locomotive was equipped with power driving-wheel brakes and appliances for operating the train brakes system, as required by the act, the mere fact that the air brake connections become uncoupled furnishes any proof whatever of a violation of the statute by the carrier.

Assuming that there was some evidence tending to establish the other acts of negligence relied upon, we are of the opinion that, in the circumstances of this case, it was not sufficient to show any causal connection between the negligent act and the injury which is supposed to have resulted there-

from. The fact that a defendant has been guilty of negligence, followed by an injury, does not make him liable for that injury, unless the connection of cause and effect is established. There must always, in actions of this kind, be a causal connection between the alleged act of negligence and the injury which is supposed to have resulted therefrom. St. L. & S. F. Ry. Co. v. Hess, 34 Okla. 615, 126 Pac. 760; St. L. & S. F. Ry. Co. v. McWhirter, 229 U. S. 265, 33 Sup. Ct. 858, 57 L. Ed. 1179.

For the reasons stated, the judgment of the court below is reversed and the cause remanded, with directions to grant a new trial.

All the Justices concur.