[No. 7010.   Decided April 4, 1908.]

## J. C. MILLER, *Appellant*, v. C. DENMAN *et al.*, *Respondents*.[1]

CORPORATIONS—SUBSCRIPTIONS TO STOCK—LIABILITY OF INCORPORATORS UPON ABANDONMENT—TRUST COMPANIES.   Under Laws 1903, p. 367, prohibiting a trust company from doing business until all its capital stock is subscribed and paid in, the original incorporators are liable to a subscriber for the amount paid on his subscription upon their abandonment of the enterprise for failure to secure full subscriptions of the stock, regardless of fraud or conspiracy in the soliciting of the subscription, and although the same was solicited by and paid to only one of their number. .

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—RATIFICATION OF AGENT'S ACT.   Where the incorporators of a trust company abandon the enterprise because of inability to secure subscriptions to the stock, a paid up subscriber to the stock does not, as a matter of law, ratify the unauthorized investment of his money in a state bank by reason of failing to promptly object, but the same is a question for the jury, where it appears that the subscriber was a farmer, unacquainted with business methods, that the secretary of the trust company, in the letter inclosing stock of the state bank, falsely represented that such investment was only temporary and for the purpose ·of paying a dividend until incorporation of the trust company, subscriptions to which would be solicited until they could complete organization and take over the business of the bank; since full knowledge of material facts is essential to ratification.

SAME.   In such a case, the subscriber would not be compromised by his election, against his protest, to the office of director and vice president of the trust company.

SAME—EVIDENCE OF RATIFICATION.   Upon an issue as to the ratification of an unauthorized investment of plaintiff's money in bank stock, which plaintiff had not promptly returned on receipt, plaintiff may show that the certificate delivered was an overissue, and also that a portion of his money represented to be invested in the stock had been used to start a small bank in another town, he having no knowledge of such facts at the time.

WITNESSES — EXAMINATION — UNWILLING WITNESS.   Liberality should be allowed upon the examination of unwilling witnesses called to testify against their own interests.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered May 29, 1907, upon grant-

[1]Reported in 95 Pac. 67.

ing a nonsuit, dismissing an action to recover money paid on a subscription for corporate stock, after a trial before the court and a jury.    Reversed.

. *Belt & Powell,* for appellant.

*Samuel R. Stern, A. G. Gray, S. P. Domer,* and *Allen & Allen,* for respondents.

CROW, J.—This action was commenced by J. C. Miller to recover $2,000 paid on a subscription for twenty shares of capital stock in the German-American Trust Company of Spokane.   On January 27, 1906, the defendants C. Denman, W. W. Parry, C. E. Clure, E. W. Swanson, J. L. Foskett, W. S. Foster, J. F. Kunz, and one Abram E. Sever, executed and acknowledged an organization certificate for the German-American Trust Company of Spokane, with $100,000 capital stock, under chapter 176, Laws 1903, page 367, known as the "trust company act."    On the same date the incorporators, as a first board of directors, organized, adopted by-laws, elected officers, and authorized the defendants E. W. Swanson and C. E. Clure, respectively elected secretary and assistant secretary, to solicit and collect the required subscriptions of capital stock.   In the performance of this duty Clure procured from the plaintiff, Miller, two subscriptions of $500 and $1,500, which the plaintiff paid.   The incorporators were unable to obtain full subscriptions, and the organization of the trust company was never perfected.   The plaintiff sued all of the incorporators except Abram E. Sever, and also joined as defendant one James McCann, who was not served and did not appear, but who seems to have been interested in the organization although not an incorporator.   The plaintiff's contention was that the defendants, instead of returning his subscription money, had, without authority, appropriated and diverted it to another purpose.   On a jury trial a nonsuit was granted, and a judgment was entered dismissing the action. The plaintiff has appealed.

The appellant in his complaint made allegations of fraud and conspiracy. He also alleged facts sufficient to sustain an action for conversion. The respondents separately answering denied all allegations of fraud and conspiracy, but affirmatively alleged that the respondents Clure, Foskett, and Swanson had invested appellant's money in capital stock of the State Bank of Washington; that he was promptly notified of such investment, and that by his failure to object thereto, he ratified and approved the same. The appellant in substance contends that the respondents are each and all of them personally liable for the amount of his subscription, even though it be conceded that he has failed to show conspiracy or fraud; that the trial court erred in rejecting evidence offered, and that it also erred in granting the nonsuit and dismissing the action. There was evidence that the respondent C. E. Clure solicited stock subscriptions for the German-American Trust Company, and that on February 14, 1906, the appellant first subscribed and paid $500 for five shares, at which time Clure delivered to him the following receipt:

"German-American Trust Company,
      "Spokane, Wash., Feby. 14, 1906.

    "Received of J. C. Miller Five Hundred Dollars in payment of five shares of the capital stock of the German-American Trust Company. Certificate for same to be issued as soon as received—not later than 90 days from date hereof.
                  "German-American Trust Company,
                        "C. E. Clure, Assistant Secy."

As no business could be transacted by the proposed corporation until the $100,000 of capital had been fully subscribed and paid, this receipt indicated that the organization was to be sufficiently perfected within ninety days to require an issue of all the capital stock. There was further evidence that, before the appellant made any additional subscription, the respondents elected him director and vice president of the proposed German-American Trust Company, although he was then ineligible, not being entitled to stock to the amount of

$1,000 par value; that he declined to act as such vice president or director, claiming he was incompetent, being a German farmer unfamiliar with business transactions and unable to write the English language; that he never did act or qualify as director or vice president; that the defendants without his authority printed his name as vice president on letterheads of the proposed trust company; that afterwards, on March 3, 1906, the appellant subscribed for fifteen additional shares of stock, and paid Clure $1,500, for which Clure delivered another receipt; that Clure told appellant he could sell all the stock in the city of Spokane, but that the organizers wanted some farmers to be interested in the trust company; that the respondents were unable to obtain subscriptions for more than $12,000 of the capital stock; that they collected on such subscriptions $6,000 in cash and $6,000 in good notes; that on or about March 10, 1906, the respondents Clure, Foskett, and Swanson, without any authority from the other respondents or from appellant, invested the $12,000 cash and notes in a corporation known as the "State Bank of Washington;" that the following letter was mailed to, and received by, the appellant Miller:

"Spokane, Wash., March 10, 1906.

"Mr. J. C. Miller,

"Dear Sir,—Owing to delay in securing the full $100,-000 capital stock required by the German-American Trust Company, we have decided to commence business as a State Bank. And for that purpose have taken over the State Bank of Washington and herewith hand you a certificate of stock for twenty shares, being the amount of your subscription in the German-American Trust Company. We do this to enable us to use the capital so that we can pay you a dividend at the close of the year. We will continue to solicit stock in the G. A. T. Co. and when the full amount is secured will open for business under that name, and will take over the business acquired through the operation of the State Bank of Washington. Assuring you that we are working for the best interests of all concerned and with the idea that in the future we will be able to launch the 'German American Trust Com-

pany' under the most favorable conditions we desire your most hearty co-operation.

"Trusting this will meet with your approval, we are,
            "Very truly yours,        C. E. Clure, Cashier."

that like letters were mailed to all the other subscribers, including some of the respondents; that in fact the cash and notes were not turned over to the State Bank of Washington for several days after March 10, 1906; that the appellant made no answer to the letter, neither did he return the bank stock; that the State Bank of Washington was organized in May, 1905; that it did business as such for about two months; that its business was transferred to and conducted by the People's Bank, which was managed by the respondent Swanson and his brother; that while the People's Bank was in business, the State Bank of Washington received no deposits; that about March 15, 1906, the State Bank of Washington, being reorganized, again commenced business; that the appellant's money was then turned over to it; that about one month later it suspended and passed into the hands of a receiver, and that shortly thereafter the appellant demanded his money from the respondents, and commenced this action.

Chapter 176, Laws 1903, p. 367, is an act relating to trust companies. Section 2 provides for the execution of a certificate of organization by not less than seven persons mentioned in § 1. These persons, under § 5, constitute the first board of directors. Sections 1 and 3 provide that, before the corporation shall be authorized to transact business, the capital stock shall be fully paid and the secretary of state shall issue to the company a certificate of authority. From these and other provisions it is evident that the organization would not be complete until all conditions precedent in the act required had been performed and the certificate of the secretary of state had been issued. Necessarily subscriptions and payments of capital stock could only be solicited and received by the original incorporators who constituted the first board of directors, or by their duly authorized agents. They were author-

ized to receive money on subscriptions, but it was their duty to preserve the same as a trust fund to be used in perfecting the organization or returned to the subscribers if the enterprise proved abortive. They stood in a position similar to that of the promoters of an ordinary corporation, and incurred at least as much liability. It was not necessary for the appellant to plead or prove that the respondents had been guilty of conspiracy or fraud, although he might properly do so. The respondents assumed certain trusts, duties, and liabilities by becoming the original incorporators and directors of the proposed company, the organization of which they intended to perfect in .compliance with the trust company act. If they collected less than the original subscriptions on capital stock, and failed to return the same when the enterprise proved unsuccessful for want of sufficient funds, they violated their trust and became liable to the subscribers whether such failure resulted from their conspiracy, fraud, or negligence. If they permitted a portion of their number to divert the funds to an unauthorized purpose, they were guilty of such negligence and breach of trust as would compel them to respond to subscribers who might thereby suffer loss. It, therefore, is unnecessary to discuss the evidence for the purpose of ascertaining whether the appellant made a case of conspiracy or fraud.

In England a charter is not granted to a corporation until all stock is subscribed and the proposed corporation is ready to proceed with its business. Hence, provision for money paid on stock subscriptions is ordinarily made by the appointment of a conditional committee of directors. Formerly this was done by promoters, and in the preliminary business transactions, the promoters now ordinarily constitute the conditional committee. The English courts have repeatedly held that, when money has been paid on stock subscriptions and the enterprise fails for want of a complete subscription, the individual promoters or provisional committee jointly and severally become liable to the subscribers for the return of their

money advanced on stock subscriptions, which must be re-
funded without any portion being deducted for expenses in-
curred. Note on liability to subscribers, 25 L. R. A. 95 (*Yale
Gas Stove Co. v. Wilcox*, 64 Conn. 101, 29 Atl. 303, 42
Am. St. 159); *Johnson v. Goslett*, 3 C. B. (N. S.) 569;
*Nockles v. Crosby*, 3 Barne & Cress 814; *Chaplin v. Clarke*,
4 Ex. 403; *Walstab v. Spottiswoode*, 15 Mees & W. 501;
*Green v. Barrett*, 1 Sim. (Eng. Rep.) 45.

In *Johnson v. Goslett*, *supra*, the court said:

"The question then arises, on what contract did the de-
positors or subscribers for shares in fact pay their money?
Was it not that the receivers should hold it to be applied to
the purposes of the projected company if, and when, it should
be fairly established? and, if it should not be established, to
be returned to them? In other words, that, in the event of
the non-establishment, and in the absence of authority to em-
ploy it in the meantime otherwise, it should be held to the use
of the parties paying it in? . . . Here, a great propor-
tion of the shares were not taken; and the concern was in fact
abandoned. There would, therefore, have been ample evidence
in an ordinary case to warrant the jury in finding that the
state of facts had arisen on which the deposits ought to be
returned."

In the case last mentioned it was also held that each and
all of seven original directors were liable to the plaintiff, al-
though his payments on stock subscribed by him had been de-
posited in a bank in the names of only five of them.

The case of *Hudson v. West*, 189 Pa. St. 491, 42 Atl. 190,
is especially applicable to the facts before us, not only on
the question of the liability of the original promoters or di-
rectors, but also as to the effect of an investment of subscrip-
tion money claimed to have been made, with the alleged ratifi-
cation and consent of subscribers. In that case the court
said:

"This question seems to be of the simplest character. There
was no pretense of any compliance on the part of the defend-
ants with the terms of the contract. They received the plain-
tiff's money in consideration that they would form a company

and give him stock therein to the amount of $10,000, and they did nothing of the kind. They certainly cannot keep the plaintiff's money in those circumstances. Their want of success in the formation of the company is no concern of the plaintiff, and it is no defense in this action."

In Alger on the Law of Promoters and the Promotion of Corporations, § 162 reads as follows:

"When a subscriber for shares in a projected corporation has paid money thereon in advance to the promoters, and the scheme proves abortive, he may recover back his money. This right rests on the failure of the consideration on which the money was paid. But the scheme is not to be deemed abortive until the formation of the corporation has been abandoned or has become impracticable, or a reasonable time for the formation has elapsed. It is reasonable, in the absence of agreement to the contrary, that the expense of exploiting the proposed undertaking should, in case it collapses, fall upon the original projectors, and not on those who advanced their money on the faith of the ability of the projectors to do that which they undertook to do."

See, also, 10 Cyc. 265; 1 Cook, Corporations (5th ed.), § 63.

We think the principles announced in the above authorities apply with especial force to the facts of this case, and that the defendants, as original directors occupying a position kindred to that of promoters, would be liable to the plaintiff for the return of his subscription even though they have been guilty of neither fraud nor conspiracy. There was sufficient evidence of their negligence, breach of trust, and failure of duty to require the question of their liability to be submitted to the jury.

The respondents contend that the appellant ratified the investment of his money in the State Bank of Washington by the defendants Clure, Foskett, and Swanson, and that he is now estopped from claiming its return. He was not familiar with the business methods of bank or trust companies. He was a plain German farmer, living in Idaho some distance from Spokane. He subscribed and paid for the stock, relying upon assurances of Clure that the investment would prove

profitable.   His failure to promptly return the bank stock
should be viewed more liberally than the failure of a business
man shown to be well versed in such matters.   The evidence
does not show that the appellant fully understood the invest-
ment. • The letter from Clure, inclosing the bank stock, gave
him no information as to the solvency, business standing, or
capital stock of the State Bank of Washington.   He was
never advised as to its true condition or situation.   Mr. Clure
stated that the trust company had already determined to take
over the State Bank of Washington, and that the certificate
for its stock which he inclosed had already been issued.   Clure
afterwards testified on the trial of this action that nothing of
the kind had been done.   Mr. Clure's letter further stated that
the action had already been taken to enable the payment of
a dividend to the appellant; that further subscriptions of
stock would be thereafter solicited by the German-American
Trust Company, and that when the full amount was obtained
the trust company itself would take over the business of the
State Bank.   To the ordinary farmer this would indicate that
the trust company enterprise had not been abandoned, but
that it was to be fully perfected, and that he would ultimately
obtain the stock for which he had subscribed and made pay-
ment.   The evidence, however, shows that no further subscrip-
tions were solicited or obtained.

"Knowledge of all material facts and circumstances.is an
essential element to an effective ratification; without such
knowledge the adoption of the acts of an unauthorized agent,
or one who has exceeded his authority, will not bind the prin-
cipal; but on the contrary, if he has given his assent while in
ignorance of the facts of the case, he may on being informed,
disavow the unauthorized transaction."   1 Am. & Eng. Ency.
Law (2d ed.), 1189.

Mr. Clure's letter did not advise appellant of all the facts
and circumstances pertaining to the disposition of his money.
The appellant is in no manner compromised by the fact
that the respondents, against his protest, pretended to elect
him director and vice president of the German-American Trust

Company. It appears that some one, without his knowledge or consent, also attempted to elect him to some office in the State Bank of Washington. He never qualified, nor did he act in any official capacity in either corporation. We cannot hold, as a matter of law, that the appellant ratified the unauthorized acts of Clure, Foskett, and Swanson, thereby relieving them and the other respondents from personal liability. In all probability he would not have approved their acts had he been fully advised of all the facts and circumstances pertaining to the investment of his money. It was within the exclusive province of the jury to determine from all the evidence whether there was any ratification by him sufficient to relieve the respondents from liability.

"Although it is said that the conduct of the principal will be liberally construed in favor of a ratification or adoption of the acts of the agent, yet a ratification is not to be presumed from a doubtful state of facts, but the question should be left to the jury." 1 Am. & Eng. Ency. Law (2d ed.), 1195.

The trial court refused to permit the appellant to show that the stock in the State Bank of Washington which had been delivered to him was an overissue. We think this was prejudicial error. If the stock was an overissue there was no investment of appellant's money which he could afterwards ratify. The court also refused evidence offered by appellant tending to show that a portion of the subscription money paid by himself and others had been used to start a bank in a small town some distance from Spokane. This evidence should have been admitted as tending to show a breach of trust and lack of good faith on the part of the respondents. We will not pass on all of the contentions made by appellant in the matter of the rejection of evidence. He pleaded conspiracy and fraud, which he was entitled to prove if he could do so. He was compelled to call the respondents to testify in his behalf. They were not only unwilling witnesses, but their interests were adverse to his. Under such circumstances much liberality should have been allowed him in conducting their examination. With-

out regard to evidence erroneously excluded, enough was actually admitted to entitle the appellant to have the issue of the liability of each and all of the respondents, and also the issue of ratification, submitted to the jury for their determination.

The judgment is reversed, and the cause remanded for a new trial.

HADLEY, C. J., ROOT, MOUNT, and FULLERTON, JJ., concur.

DUNBAR and RUDKIN, JJ., took no part.