## JACKSON et al. v. NORMAN.

No. 12487—Opinion Filed May 20, 1924.

1. **Corporations—Subscriptions to Stock—Failure to Organize—Recovery by Subscriber from Promoters.**

Where money is paid by a subscriber for shares in a projected company preliminary to the organization thereof, and where the promoters failed to organize such company and abandoned the enterprise, such subscriber may recover back the money so paid, in an action at law, as for money had and received to his use.

2. **Same—Status of Subscriber in Projected Company.**

A subscriber for shares of stock in a proposed company does not, so long as it remains a mere project, become a partner.

3. **Same—Failure of Enterprise—Liabilities of Promoters.**

Where promoters attempt to form a company, and after selling a part of the capital stock of such company abandon the project,

It is their duty to return the amount of the subscription to the subscriber, and the loss and expense incurred in such abortive enterprise must be borne by the promoters and not by the subscriber.

### 4. Appeal and Error — Harmless Error— Taking Case from Jury—Action to Recover Price of Stock from Promoters.

In an action at law. by a subscriber for stock in a proposed company, where it is admitted that the project has failed and been abandoned by the promoters, and that the subscriber did not acquiesce in or consent to the use of the money paid in by him for any other purpose, and there is no dispute as to the amount, it is harmless error for the court to discharge the jury and render judgment for the plaintiff.

(Syllabus by Dickson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Cotton County; Cham Jones, Judge.

Action brought by J. C. Norman for money had and received, against J. W. Jackson, A. S. Wells, E. S. Bingham, O. F. Gammill, E. S. Martin, P. J. Hartzler, R. L. Wyatt, W. T. Huff, L. L. Davis, R. A. Odam, W. D. Sawyer, E. E. Jackson, and Claude Caddell, Jackson-Queen Oil & Gas Company, a copartnership composed of J. W. Jackson. A. S. Wells, A. G. Bingham, O. F. Gammill, E. S. Martin, P. J. Hartzler, R. L. Wyatt, L. L. Davis, R. A. Odam, W. D. Sawyer, E. E. Jackson, W. T. Huff, Claude Caddell and A. J. Emery. Judgment went for plaintiff, and against all of the defendants except A. S. Wells and A. J. Emery. The defendants, except the last two named, have appealed to this court. Affirmed.

P. Mounts and W. H. Hussey, for plaintiffs in error.

E. L. Richardson, for defendant in error

Opinion by DICKSON, C. The parties will be referred to in this opinion as plaintiff and defendants, as they were designated in the trial court.

The defendants, being owners of an oil and gas lease covering 20 acres of land in Cotton county, Okla., undertook to organize a company to be known as the Jackson-Queen Oil & Gas Company, with a capital stock of $60,000, to be divided into 600 shares of the par value of $100 each, and induced the plaintiff and various other persons to subscribe and pay for shares of stock in said company under a written agreement, which, in substance, provides that the money derived from the sale of said stock should be turned to A. J. Emery as trustee, and that when $60,000 worth of said stock was sold and paid for, it should be used as follows: $25,000 to be paid to the defendants for the lease, $20,000 to be set apart for the drilling of said proposed well, and the remainder to be used for the expense of promoting the company.

The contract further provided that the funds derived from said stock should be deposited by the trustee in the Bank of Devol, of which it appears the said trustee was an officer, and in no way interested in the Jackson-Queen Oil & Gas Company.

The defendants succeeded in selling $12,190 worth of the stock, and in the meantime, wells having been drilled on adjacent lands and proved to be dry, all further efforts to organize a company and sell the remainder of the shares were abandoned. The defendants thereupon induced the trustee to turn the money over to them and appropriated to themselves $2,453.25 as commissions for selling the stock, and paid to themselves upon the lease $8,033.20, and also took credit for certain expenses and for building a derrick, leaving a balance derived from the proceeds of said stock in their hands of $1.014.96. They then mailed to their subscribers a notice to the effect that the land covered by the lease had been condemned by reason of an adjacent well having been proven to be dry, and proposed to settle with the subscribers by refunding $8.25 per share.

The plaintiff, having paid $100 for one share of said stock and holding assignments of a number of the other subscribers, refused to accept the settlement and demanded a return of the money, and upon the defendants refusal to pay, instituted this suit.

On the trial there was no substantial conflict in the evidence. The defendants admitted that they received the money and that they paid it out as above stated. There was the admission on the part of the defendants that the project had failed, and no attempt was made to show that the plaintiff, or any person whose interest had been assigned to him, had acquiesced in the expenditure of this money. The plaintiff's contention was that the stock was subscribed for and the money paid upon the agreement of the defendants to hold the money to the subscribers' use until the entire 600 shares were sold.

At the close of the defendants' evidence the court, on the motion of the plaintiff, discharged the jury and rendered judgment

for the plaintiff, and against all of the defendants, except A. S. Wells and A. J. Emery, trustee, and the defendants have appealed to this court, and contend that the court erred in taking the case away from the jury, and insist that issues of fact arising for the recovery of money must be tried to a jury, and this we readily concede, but in this case the trial court decided that there was no question of fact to be submitted to the jury; that the admission of the defendants when considered in the light of the contract fixed their liability.

"A motion to withdraw a case from the jury and render judgment for the plaintiff upon all the evidence, presents to the court the same question as a motion to direct the verdict in favor of the moving party; and this should be done where the party on whom rests the burden of proof has wholly failed to present any evidence to support his case and there are no disputed facts for the jury to pass upon." Frick v. Reynolds, 6 Okla. 638, 52 Pac. 391.

"The court may withdraw a case from the jury and direct a verdict for the defendant where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it." Nathan Neeley v. Southwestern Cotton Seed Oil Company, 13 Okla. 356, 73 Pac. 945.

We think the contract upon which this money was subscribed will bear no other construction than that placed upon it by the court. It will be noted that the payment was not made directly to the defendants but to the trustee, and the scheme upon its face showed that it was idle to attempt operations on a capital of $12,000. The lease was to cost $25,000, and the drilling of the well $20,000. And, as we view it, no part of this subscription should have been used by the defendants until the amount of stock mentioned in the contract had been sold, or in any event, a sufficient amount to reasonably insure the consummation of the project.

The liability of defendants in this case is not essentially different from that of the ordinary promoters of corporations. Those subscribers parted with their money upon the understanding that sufficient money would be raised to purchase the oil lease, drill a well, and pay the expenses of the organization. This was the inducement held out to them by the promoters. They received nothing of the kind.

"If money is paid to promoters or provisional directors by a subscriber for shares in a projected corporation preliminary to organization, and the promoters or provisional directors fail to organize the corporation according to the prospectus or other agreement or abandon the enterprise before it has been carried into execution, it is a case of money paid on a consideration which has failed, and the subscribers may therefore recover it back from the promoters or directors in an action at law as so much money had and received to his use, although the money has been applied in payment of preliminary expenses or otherwise, unless it is shown that he has consented to, or acquiesced in, the application of the money which those into whose hands it has come have made of it." 14 C. J. 276, section 322.

In Alger on the Law of Promoters and the Promotion of Corporations, section 162, it is said:

"When a subscriber for shares in a projected corporation has paid money thereon in advance to the promoters, and the scheme proves abortive, he may recover back his money. This right rests on the failure of the consideration on which the money was paid. But the scheme is not to be deemed abortive until the formation of the corporation has been abandoned, or has become impracticable, or a reasonable time for the formation has elapsed. It is reasonable, in the absence of agreement to the contrary, that the expense of exploiting the proposed undertaking should, in case it collapses, fall upon the original projectors, and not on those who advanced their money on the faith of the ability of the projectors to do that which they undertook to do." Miller v. Denman (Wash.) 16 L. R. A. (N. S.) 348, 95 Pac. 67.

See, also, note on liability to subscribers, 25 L. R. A. 95.

It is further contended by the defendants that the plaintiff's cause of action is based on an agreement of association which made the subscribers thereto partners, therefore the plaintiff could not recover in an action at law until there had been an accounting of the partnership affairs.

It is finally contended that the court erred in the assessment of the amount of recovery, and under this assignment it is contended that these subscribers were not entitled to recover anything more than their proportion of the assets of the company after the debts, expenses, and liabilities had been paid.

A sufficient answer to this contention is that these promoters undertook to organize a company with a capital stock of $60,000, and having failed to do so, the loss must fall upon the promoters and not upon the subscribers. Miller v. Denman, supra.

We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.