## E. F. MACKEY, Respondent, v. ALFRED PAGE, Appellant.

[229 Pac. 400.]

CONTRACTS — CORPORATIONS — ORGANIZATION — ABANDONMENT — PRO-
MOTER'S AGREEMENT—TRUST AGREEMENT—RESCISSION—PURCHASE
OF STOCK—STOCK SUBSCRIPTION—DELIVERY—PAYMENT—EVIDENCE
—SUFFICIENCY.

1.   Where money is paid to a promoter for shares of stock in a
contemplated corporation and the promoter fails to organize the
corporation and abandons the enterprise, the subscriber may recover
back the money paid to the promoter even though the money has
been applied in payment of the preliminary expenses of the organi-
zation of the proposed corporation, unless it is shown that the
subscriber has consented to or acquiesced in the application of
the money.

2.   A provision of a trust agreement, that certain stock in a
corporation would be delivered when and at such time as the lands
purchased should be paid for in full from the proceeds of the
sale of treasury stock and when sufficient funds to drill one or
more wells shall have been realized, is a statement of the condi-
tion upon which the stock was to be delivered.

3.   A subscriber for stock in a proposed corporation who agrees
that the delivery of his stock may be withheld until sufficient of
the treasury stock is sold to provide for certain deferred payments
on land and to drill one or more oil wells, upon an abandonment
of the enterprise and a refusal to deliver the stock, cannot main-
tain an action for the recovery of the money paid by him for the
stock.

APPEAL from the District Court of the First Judicial
District, for Shoshone County, Hon. W. F. McNaughton,
Judge.

Action for money had and received.   Judgment for plain-
tiff.   *Reversed.*

J. E. Gyde and John P. Gray, for Appellant.

Plaintiff having failed to prove the material allegations
of his complaint, he cannot recover.   Where the allegation

of the claim to which the proof is directed is unproved, as in this case, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance, but a failure of proof. (C. S., sec. 6724; *Gillin v. Hopkins,* 28 Cal. App. 579, 153 Pac. 724; *Bryan v. Tormey,* 84 Cal. 126, 24 Pac. 319; *Bender v. Bender,* 14 Or. 353, 12 Pac. 713; *Honeyman v. Oregon C. R. Co.,* 13 Or. 352, 57 Am. Rep. 20, 10 Pac. 628; *Evans v. Bailey,* 6 Cal. 112, 4 Pac. 1089; *Eidinger v. Sigwart,* 13 Cal. App. 667, 110 Pac. 521.)

James A. Wayne and Therrett Towles, for Respondent.

Where money is paid to the promoter of a corporation by a subscriber to stock therein, and the organization of such corporation is not completed, or proves abortive, or is abandoned, or the enterprise is abandoned, and the promoter, without the consent of the subscriber, uses such money for other purposes, even though such purposes be legitimate and in connection with the proposed corporation, the subscriber may recover back the amount of his subscription from the promoter in an action for money had and received. (14 C. J., p. 276, secs. 322, 323; *Miller v. Denman,* 49 Wash. 217, 95 Pac. 67, 16 L. R. A., N. S., 348; *Hudson v. West,* 189 Pa. St. 491, 42 Atl. 190; *Lang v. Blocki,* 286 Ill. 91, 121 N. E. 163; 1 Fletcher's Cyc. of Corp., 339, sec. 165; 1 Clark & Marshall on Corp., sec. 110; *Manistee Lumber Co. v. Union Nat. Bank,* 143 Ill. 490, 32 N. E. 449; *Rose v. Foord,* 96 Cal. 152, 30 Pac. 1114; note to 25 L. R. A. 95.)

WM. E. LEE, J.—Early in 1914, appellant and certain associates had become interested in what was thought to be an oil field in the Province of Alberta, Canada. They had secured an option to purchase 320 acres of land for $32,000, had paid $8,000 thereon, and had also secured oil and gas leases on land in that section covering more than a thousand acres. Appellant and his associates decided to incorporate a company under the laws of the Dominion of Canada and

the company, The Caledonia Oil Company, Limited, was incorporated on May 28, 1914; and its prospectus was filed in the proper office of Alberta Province on July 20, 1914. A certificate was issued authorizing the company to commence business. It seems, however, that because of a failure to file a certain "declaration" required by that Province, the incorporation of the company was never completed; in 1921 the company was not "in good standing"; and the "company was struck off the registrar . . . . in 1917 and no application has been made to reinstate the company." Appellant and his associates transferred their interests to the company and were to receive certain stock in payment thereof, but they were not to sell any of their stock until sufficient funds had been realized by the company from the sale of treasury stock to finish paying for the 320 acres of land and to drill one or more oil wells. About March, 1914, respondent, knowing of the oil excitement over this supposed oil field and of the interest of appellant therein, evidenced a willingness to get into the proposed company, and thereafter executed the following application for the purchase of stock:

"Capital Stock, $1,500,000.

"Wallace, Idaho, June 18, 1914.
"The Caledonia Oil Company,
"Limited, 2128.
"Calgary, Alberta.

"(Non Personal Liability)           (Non Assessable)

"I, E. F. Mackey, hereby apply to purchase 3000 shares of the capital stock of your company at 20¢ per share, which shares are non assessable and of par value of One Dollar each. Enclosed herewith is my remittance of $600.00 in payment of said shares. I acknowledge that I have seen and read a copy of the Company's Prospectus and I agree that no representations, except such as are contained in said prospectus, shall be binding on your company.

"Signature, E. F. MACKEY,
"Address, Wallace, Idaho.
"Salesman, WM. J. HALL."

The stock was not delivered upon the receipt of the application and the payment of the $600. It had not been issued. The prospectus referred to in the application contained the following material provision relating to the purposes of the company:

"This Company was organized under the laws of the Province of Alberta, Canada, for the purpose of taking over certain options, lands and leases, covering in all 1600 acres of oil lands in the Oil District adjacent to the city of Calgary, Alberta, from Mr. Page and associates, who had been prospecting and negotiating for oil lands and leases for several months past."

Some time after the application was signed and the money paid the parties entered into what is termed a trust agreement, as follows:

"I hereby acknowledge that I hold 3000 shares of the capital stock of the Caledonia Oil Company, Limited, in my name as Trustee for E. F. Mackey, and I bind myself, my heirs, executors, administrators and assigns, that I shall and will cause said 3000 shares of stock to be issued and registered in the books of the said company unto the said E. F. Mackey, when and at such time as the lands purchased described as follows:

"The south-half of Section Six (6), Township Twenty-three (23) Range Three (3), West of the Fifth (5th) Meridian, shall be paid for in full from the proceeds of the sale of the Treasury Stock, and in addition thereto there shall have been realized by the sale of the said Treasury Stock sufficient funds to drill one or more wells as I shall determine to be for the best interests of the said Company.

"It is agreed that no sale or transfer of this certificate or the shares thereby covered will be recognized or of any validity whatsoever until this trust is determined as herein mentioned.

"Any dividend or benefit arising out of the ownership of the said stock shall belong to the said E. F. Mackey as fully as if the said stock was held by him.

"When this trust is ended the shares of stock shall forthwith be issued to said E. F. Mackey.

"ALFRED PAGE.<br>"Trustee,<br>"By WM. J. HALL.

"Dated 7–7, 1914.

"I hereby agree to all the terms of the said above Trust Agreement and Consent to all its terms and provisions and I agree to resort to no methods or means to dispute or to dissove it until it is determined in the manner above set out.

"Dated 7–17, 1914.

"E. F. MACKEY."

After the trust agreement was made other leases and options were acquired, and the company spent between forty and fifty thousand dollars in the venture. Within a few months, upon the completion of certain wells in the supposed oil field by others, appellant and his associates became satisfied that oil could not be found there, and abandoned the enterprise. The stock was never delivered to respondent, and in an action for that purpose he recovered judgment against appellant for the sum paid on the stock subscription, together with interest. The appeal is from the judgment. One of the assignments of error is that the evidence is insufficient to sustain the judgment.

The following provision of the trust agreement for the delivery of the stock: " . . . . when and at such time as the lands purchased . . . . shall be paid for in full from the proceeds of the sale of the treasury stock and . . . . there shall have been realized by the sale of the said treasury stock sufficient funds to drill one or more wells . . . . " does not constitute an agreement or obligation on the part of appellant to apply the $600 in payment of the balance owing on the land or for the drilling of an oil well. It is the statement of the condition, and the only condition expressed in the trust agreement, upon which the trust was to be determined and the stock was to be delivered. It is recognized in the agreement that it is a condition for the

delivery of the stock and not an obligation to apply the $600 or any other sum in payment of the balance due on the land or for drilling.

In the light of the briefs and oral argument submitted on the first hearing, it seemed to us that the conditions mentioned in the so-called trust agreement implied an obligation on appellant's part to see to it that the money paid by respondent for his stock was applied to the fulfilment of these conditions. That view of this vital question was the basis of the original decision. This phase of the case was more fully and clearly presented on rehearing. We are now convinced that the construction we placed on the agreement in the original opinion is not the correct one, and that opinion will not be published.

Where money is paid to a promoter for shares of stock in a contemplated corporation and the promoter fails to organize the corporation and abandons the enterprise the subscriber may recover back the money paid to the promoter, even though the money has been applied in payment of the preliminary expenses of the organization of the proposed corporation, unless it is shown that the subscriber has consented to or acquiesced in the application of the money. (14 C. J. 276, sec. 322, and cases cited.)

Taking into consideration the application for the purchase of the stock, the prospectus, the trust agreement and the testimony of both appellant and respondent, it conclusively appears that the money paid by respondent was not misapplied. Respondent understood that the money was to be placed in the treasury, in the common fund, and to be used to promote the purpose for which the corporation was being organized. He testified that no special representations were made to him as to what was to be done with the $600 other than that "it was to be used to find oil." It appearing from the evidence that respondent consented to the expenditure of the money paid by him as a subscriber for stock, he cannot recover the money back even though the enterprise was abandoned and the stock was not delivered to him. 14 C. J. 276, secs. 322 and 323, *Miller v.*

*Denman et al.,* 49 Wash. 217, 95 Pac. 67, 16 L. R. A., N. S., 348; *Hudson v. West,* 189 Pa. St. 491, 42 Atl. 190, and other cases cited, apply where there has been no acquiescence in or consent to the expenditure of the money. The trust agreement, which imposed a condition upon which the stock would be issued and delivered to respondent, places him in a different situation than that of a mere subscriber for stock in an abandoned enterprise. The organization of the proposed corporation was not the condition, set forth in the trust agreement, upon which the stock was to be delivered to respondent, for, in the trust agreement, he bound himself to forego the delivery of the stock, which he had purchased, for an indefinite period; and the delivery of the stock was made contingent upon a condition which might never arise, to wit: the sale of sufficient treasury stock to pay a balance of $24,000 for the oil land and to secure sufficient funds with which to drill one or more wells. In the face of this situation respondent has put himself without the rule upon which a recovery was had in *Miller v. Denman, supra,* his right to the delivery of the stock was made to depend upon a condition other than the organization of the corporation. The trust agreement entitled him to share in any dividends and benefits from his stock ownership before it was delivered to him. The stock held under the trust agreement was the measure of his interest in the enterprise. Instead of a stock subscriber in an abandoned enterprise and entitled to a repayment of his money, he more nearly occupied the position of a stockholder trying to recover possession of his stock, which had been pooled, or otherwise parted with, and which was wrongfully withheld. In such a case it is difficult to see how an action for money had and received would lie. If respondent had a right of action, under these peculiar circumstances, it must have been an action in damages for wrongfully withholding the stock; and his measure of damages would appear to have been the value of the stock at the time appellant abandoned the enterprise. When respondent assented to the trust agreement, his rights with respect to the stock were based upon the trust

agreement. When he assented to the delivery of his stock on an undetermined future day, he lost his right to demand the return of his money because of the abandonment of the enterprise. Under such circumstances, upon a failure to deliver the stock, it would be most inequitable to either permit or restrict one to a recovery of the sum paid for the stock. It might, upon a failure to deliver the stock, have a market value much greater than the sum paid for it, or its value might be much less. Had the stock become valuable he would not have been satisfied with the mere return of his money; his stock having become worthless, he should not be permitted, having "had a run for his money" to get back his money.

Judgment reversed. Costs to appellant.

McCarthy, C. J., Budge, J., and Johnson, District Judge, concur.