**McBROOM et al. v. BUCHWALD et al.
(No. 9020.)**

Court of Civil Appeals of Texas. Galveston.
June 23, 1927.

Rehearing Denied July 14, 1927.

**1. Banks and banking ⬅=39 — Subscriber to contemplated banking corporation was released, where promoters abandoned original enterprise and organized bank and trust company instead.**

The subscriber to a contemplated banking corporation was released, where the promoters abandoned the original enterprise and organized a bank and trust company in its stead, and was not required to accept stock in the new corporation.

**2. Banks and banking ⬅=39—Promoters organizing corporation in stead of one originally contemplated, retaining funds subscribed, are individually liable for full amount thereof.**

Promoters acting together as trustees in organization of a bank and trust company in place and stead of an originally contemplated bank are individually liable for full amount of money paid by a subscriber to the original enterprise and retained by them.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Action by A. Buchwald against H. McBroom, E. W. Bannon, and others. Judgment for plaintiff against all defendants for less than the amount claimed, and for defendant Bannon against the remaining defendants. The plaintiff appeals from so much of the judgment as denied to him the full amount claimed, and the defendants, except the defendant Bannon, appeal. Reformed and affirmed.

Charles Murphy, of Houston, for appellants.
Harry Dow and Daniel Schlanger, both of Houston, for appellees.

LANE, J. This suit was brought by appellee Buchwald against H. McBroom, K. E. Choate, W. E. Cummings, S. R. Smith, Frank McCurdy, E. W. Bannon, Roy W. Williams, J. M. Summers, W. H. Lighthouse, B. C. Bukowski, and Mary Wise to recover the sum of $1,800.

For cause of action the plaintiff alleged substantially that on or about the 1st of June, 1924, the five defendants first above named associated themselves into a board of trustees for the purpose of organizing a labor bank to be operated in Houston, Tex.; that said parties, as trustees, employed salesmen to sell stock of the proposed labor bank, which they proposed to incorporate for the purpose of conducting a deposit and discount business; that it was the declared intention of said parties to incorporate said bank with a capital of $100,000 and a surplus of at least $20,000;

that said capital stock of $100,000 was to be divided into 1,000 shares, of the par value of $100 each, and that in order to secure a surplus of at least $20,000 each share was to be sold for $150, and organization expenses not to exceed 20 per cent. of the money derived from the sale of the stock were to be deducted from the $150,000 realized by the sale of 1,000 shares, at $150 per share; that said labor bank was to be incorporated under the corporation laws of the state of Texas.

That in pursuing their plans to organize said bank, the above-named defendants employed R. Q. Brazell and other salesmen to sell stock in said proposed labor bank; that said salesmen were authorized to solicit subscriptions for stock in said proposed bank, and to explain to any prospective subscriber the purpose for which the bank was to be formed, and the capitalization of the bank and all necessary details in reference to said bank to induce a prospect to subscribe to stock in the proposed institution.

That thereafter, to wit, on or about June 17, 1924, defendants' agent and salesmen visited plaintiff's place of business and solicited plaintiff's subscription to stock in the proposed bank; that said agent stated that he represented the board of trustees of the labor bank who were promoting the organization of said bank and were offering stock for sale in said institution; that said salesmen further represented that said banking institution would be organized under the corporation laws of the state of Texas for the purpose of doing a business of deposit and discount, and that it would be organized purely as a labor bank; that said agent further represented that the capitalization of said proposed bank would be a capital stock of $100,000, and a surplus of $20,000 more; that the capital stock would be divided into 100 shares of the par value of $100, but that the shares were being offered for sale at $150 each in order to have a surplus of at least $20,000, after deducting the expense of organization, which was not to exceed 20 per cent. of the amount derived from the sale of stock; that after the organization and incorporation of said bank each share of stock would have the value of at least $120; that such a large surplus amounting to one-fifth or over of the capital stock would give the bank a sound position, and would be an inducement to prospective depositors; that such a large surplus would also enable the bank to make more loans, and would render the bank financially strong; that plaintiff, relying upon the representations as thus made by defendants, subscribed to 5 shares of the capital stock of said labor bank at $150 per share, amounting to $750, and paid thereon the sum of $75.

That thereafter, on June 24, 1924, plaintiff subscribed to an additional 25 shares of said stock at $150 per share, amounting to $3,750,

upon which plaintiff paid the sum of $375; that said subscription agreements covering the first 5 shares purchased by plaintiff on June 17, 1924, and the additional 25 shares purchased on June 24, 1924, are evidenced·by written agreements dated June 17, 1924, and June 24, 1924, and numbered 268 and 452, respectively; that said agreements are addressed to the board of trustees of the labor bank and state that the subscriber has subscribed to a certain number of shares of the capital stock of the labor bank "now being organized in Houston, Tex. Capital stock $100,000, divided into 1,000 shares of the par value of $100. Each share being sold for $150. It being distinctly understood that organization expenses not to exceed 20 per cent. of this subscription may be deducted."

That after he had subscribed for the additional 25 shares of said stock he paid to said trustees, upon their demand therefor, including the $75 first paid, the sum of $1,800 on his subscription up to October 8, 1924; that he has at all times been willing and able to comply with the terms of his subscription agreement, provided the institution as represented to him was organized; that on March 17, 1925, after he had paid the $1,800, he received a letter from said organizers or promoters upon which it was shown that W. H. Lighthouse, B. C. Bukowski, and Mary Wise had been added to the list of trustees of such organization, said letter being signed by H. McBroom, as chairman, and B. C. Bukowski, as secretary; that by said letter he was instructed that as a subscriber for stock of the labor bank he would be required to appear at the office of the organizers and bring his original contract and all receipts showing payments to defendants by him; that he appeared at said office as directed, and he was then and there informed that the contemplated labor bank had been liquidated, and that the organizers or promoters were organizing a corporation to be known as the Houston Labor Bank & Trust Company to take the place of the proposed labor bank; that said Houston Bank & Trust Company would be capitalized for $100,000; that all subscribers of the labor bank were asked to surrender their original subscription agreements, and that such subscribers would receive for each $150 share paid for, the sum of $25 returned to them and would be given a check for $15 payable to the trustees of the labor bank to sign covering the expenses of the organization of said labor bank, the organization of which was abandoned and entirely liquidated, the balance of $110 would be covered by check made payable to the subscriber who would indorse same over to the trustees of the Houston Labor Bank & Trust Company, and that the subscriber would be asked to sign such check and new subscription agreement covering stock in the proposed Houston Labor Bank & Trust Company, organized with a capital stock of $100,000 and a surplus of $10,000.

That it becoming apparent to him that the effort to organize the originally planned labor bank along the prospectus represented to him by defendants had been abandoned, and that an effort was being made to force him into the proposed Houston Labor Bank & Trust Company and to apply the payments he had made to the defendants for subscription to stock of the proposed labor bank toward the payment for stock of the proposed Houston Labor Bank & Trust Company, which under the law was clothed with powers involving risks and hazards not common to a bank, and which were not contemplated by him at the time he subscribed for the stock of the labor bank, he refused to accept stock of the proposed Houston Labor Bank & Trust Company in lieu of the stock for which he had subscribed, or to have the money which he had paid to defendants applied to the purchase of stock in said newly proposed organization, and demanded that defendants return to him the $1,800 paid by him to them.

He prayed for judgment for $1,800, together with interest thereon.

All defendants except E. W. Bannon answered by general demurrer and general denial.

Defendant Bannon answered by general denial and specially pleaded that the defendants Bukowski, McCurdy, McBroom, Lighthouse, and Choate were trustees for the Houston Labor Bank & Trust Company and the governing board of the trustees of such institution; that said parties executed and delivered to him the following instrument:

"Houston, Texas, February 16, 1926.

"Mr. Ed Bannon, Houston, Texas.—Dear Mr. Bannon: We, the undersigned defendants in the suit of Buchwald v. H. McBroom et al., agree to save you harmless from any judgment that may be entered against you in said suit by virtue of your relation of trustee. This agreement is made because you were not a trustee at the time the cause of action, upon which the Buchwald suit is predicated, accrued.

"Very truly yours,    B. C. Bukowski.
                      "Frank B. McCurdy.
                      "Hugh McBroom.
                      "W. H. Lighthouse.
                      "K. E. Choate."

That by said agreement said parties agreed to save him harmless from liability, debt, or judgment growing out of this cause. He prayed that, in the event any judgment should be rendered against him, he have judgment over against the parties who executed and delivered to him the aforesaid instrument.

By trial amendment, the plaintiff alleged:

"That defendants before the purchase of said stock by plaintiff represented that there would be no deduction for organization expenses unless the full amount of capital stock was subscribed and the corporation chartered in ac-

cordance with the terms of the subscription contract with a capitalization of not less than $120,000, including capital and surplus, and that an amount not to exceed 20 per cent. of the subscription contract would be deducted for organization expenses and for the expenses necessary to open said labor bank and purchase the necessary furniture, fixtures, and equipment for the operation thereof; that unless said proposed labor bank was organized, no amount whatsoever would be deducted for organization or promoting expenses; that the full amount of said capital of said labor bank was never subscribed in accordance with plaintiff's contract, but that said venture was entirely abandoned, and defendants are therefore not entitled to make any deductions for organization expenses."

The cause was tried before the court without a jury, and judgment was rendered in favor of the plaintiff against all defendants for the sum of $1,440, with interest thereon at the rate of 6 per cent. from the 17th day of March, 1925. Judgment was also rendered in favor of defendant Bannon against defendants Bukowski, McCurdy, McBroom, Lighthouse, and Choate, jointly and severally, for any sum which he may be required to pay by reason of the judgment rendered in favor of the plaintiff.

The plaintiff A. Buchwald has appealed from so much of the judgment of the court as refused to award to him the entire sum of $1,800 sued for by him. All defendants except E. W. Bannon have appealed from the judgment rendered against them.

[1] Appellants McBroom and others, as cause for a reversal of the judgment rendered in favor of appellee Buchwald, contend that appellee subscribed for 30 shares of stock of the Houston Labor Bank & Trust Company at $150 per share, a total sum of $4,500 and that after having paid $1,800 of said sum he refused to make any further payments; that by such refusal he forfeited all interest he had in the shares of stock subscribed by him and the money paid by him as part of the purchase price for said shares, in that the enterprise was a joint undertaking of appellee and appellants, and therefore he was not entitled to a recovery of any sum whatever from appellants.

Such contention cannot be sustained. It is shown that appellee was induced by an agent of the defendants, as promoters of a contemplated labor bank, to subscribe for 30 shares of stock of said bank upon the representation by said agent that the bank was to be organized and incorporated with a capital stock of 1,000 shares at $100 per share, which were to be sold to subscribers at $150 per share in order to raise a total fund of $150,000; that the bank was to be a labor bank, incorporated under the laws of the state of Texas, with powers applicable to banks. The subscription contracts signed by appellee recite that it was to be distinctly understood that organization expenses should not exceed 20 per cent. of the subscription price, which might be deducted as an expense fund. It was shown that appellee was told by said agent that the total capital stock of the bank was to be $100,000, the surplus $20,000 and more, provided the organization expenses should not consume all the 20 per cent. of the subscription price, amounting to $30,000; that notwithstanding such representations, upon which appellee relied in making his subscriptions and payments thereon, appellants abandoned their effort to organize and incorporate the labor bank as contemplated and proceeded to organize the Houston Labor Bank & Trust Company with a capital stock of $100,-000, which was to be sold at $125 per share; $10,000 of the sum to arise from the sale of the 1,000 shares was to be retained as a surplus, and $15,000 thereof to be set aside as an expense fund. It was shown that after appellants had abandoned their efforts to organize the labor bank and had agreed to organize and incorporate a bank and trust company, which under the law is clothed with powers involving risks and hazards not common to banks, appellants, through an agent or officer, demanded of appellee a surrender of his subscription agreements by which he agreed to purchase stock of the original labor bank, and that he accept in lieu thereof subscription receipts for 30 shares in the Houston Labor Bank & Trust Company; that appellee refused such demand, and on or about the 17th day of March, 1925, demanded of appellants the return of the $1,-800 which he had paid for stock of the abandoned institution, and that appellants refused to return the same. It was shown that all the defendants were jointly interested as promotors of the institution which was finally incorporated, and that as such promoters they took charge of the $1,800 paid by appellee for stock of the projected labor bank, the effort to organize which was abandoned. In support of the conclusions reached by us, we quote from the following authorities:

14 Corpus Juris, p. 276:

"If money is paid to promoters or provisional directors by a subscriber for shares in a projected corporation preliminary to organization, and the promoters or provisional directors fail to organize the corporation according to the prospectus or other agreement, or abandon the enterprise before it had been carried into execution, it is a case of money paid on a consideration which has failed, and the subscriber may therefore recover it back from the promoters or directors in an action at law as so much money had and received to his use, although the money has been applied in payment of preliminary expenses or otherwise, unless it is shown that he has consented to or acquiesced in the application of the money which those into whose hands it has come have made it; or, in a proper case, he may maintain a bill in equity for the same purpose."

2 Fletcher's Cyclopedia Corporations, pp. 523–525, and pp. 1142–1149:

*"Formation of a Different Corporation.* Since there must be mutual assent to constitute a binding contract of subscription, an offer to one person or corporation cannot be accepted by another. And it necessarily follows that a person who subscribed for stock in a corporation to be formed, and who does not consent to any change in the subscription, is not liable if the corporation which is afterwards formed, and which seeks to enforce the subscription, is a different corporation from that contemplated by the subscription. In such a case, no contract at all is formed. The subscriber is entitled to stand upon the contract he has made and cannot be compelled to accept a different one, regardless of whether it is more or less favorable to him."

"The subscriber is released where the corporation is formed under the laws of a different state than the one contemplated, at least where the stock is thereby rendered less valuable and desirable than it otherwise would have been, or where it is formed for a longer period than contemplated, or with a greater or less amount of capital stock than is specified in the contract, or where the subscription is for stock in an unincorpoated joint-stock company, and the association is incorporated."

7 Ruling Case Law, p. 86:

"The promoters or incorporators who receive payments of subscription to stock of the proposed corporation are personally liable for the return of the money paid, in case of failure to perfect the incorporation."

The rule stated above is supported by the following cases: Bohn et al. v. Burton Lingo Co. (Tex. Civ. App.) 175 S. W. 174; Autrey v. Linn (Tex. Civ. App.) 138 S. W. 197; Railway Co. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 769; Baker v. Fort Worth Board of Trade, 8 Tex. Civ. App. 560, 28 S. W. 403; New Nueces Hotel Co. v. Weil Bros., 243 S. W. 731, at page 733; Miller v. Denman, 49 Wash. 217, 95 P. 67, 16 L. R. A. (N. S.) 348; Alger on Law of Promoters and Promotions of Corporations, par. 162.

[2] Appellants also insist that the court erred in rendering judgment against them, or either of them, in that it was not shown that they, or either of them, was a trustee of the projected bank, or that they, or either of them, received any of the money which plaintiff paid to the promoters of the projected bank.

There is, we think, no merit in such contention. The evidence was amply sufficient to support a finding by the trial court that all of the defendants were acting together as trustees in the organization of the Houston Labor Bank & Trust Company, and that they took possession of the money paid by appellee upon his subscription to the labor bank, and that they were retaining possession of such money and refusing to return the same to appellee.

What we have said disposes of the contentions of appellants.

Appellee Buchwald insists that the court erred in refusing to render judgment in his favor for the entire sum of $1,800 sued for by him instead of for $1,440, same being the sum for which judgment was rendered in his favor.

We think appellee's contention should be sustained. Where promoters of a contemplated corporation, as in the present case, receive money paid on a subscription to the stock of such contemplated corporation, and fail to complete the organization and corporation substantially as contemplated, such promoters are jointly and severally liable to the subscribers for the return of their money. 14 Corpus Juris, p. 276; 7 R. C. L. p. 86; also authorities above cited.

Having reached the conclusions above expressed, the judgment rendered in favor of appellee A. Buchwald against appellants and E. W. Bannon is here reformed so as to adjudge to him a recovery from such parties of the sum of $1,800, together with interest thereon at the rate of 6 per cent. per annum from the 17th day of March, 1925, until paid. The judgment, as so reformed, is affirmed.

Reformed and affirmed.